■    In the Matter of FRED SPRINGER, Appellant, v ROBERT P. WHALEN, as Commissioner of Health of the State of New York, Respondent.—Appeal from a judgment of the Supreme Court at Special Term, entered February 17, 1978 in Albany County, which dismissed plaintiff's application to, among other things, enjoin enforcement of subdivision 5 of section 2806 of the

Public Health Law. Plaintiff owns, operates and possesses operating certificates for the Park Nursing Home and Rockaway Care Center, which are residential health care facilities licensed by New York State. On June 21, 1977 he pleaded guilty in the Supreme Court, Queens County, to grand larceny in the third degree, a class E felony, in connection with his activity as operator of the nursing homes. On August 18, 1977 he received a sentence of five years' probation and, pursuant to article 23 of the Correction Law, he was granted a certificate of relief from disabilities and forfeitures. Between his plea and sentencing, chapter 896 of the Laws of 1977 became effective on August 11, 1977. It added subdivision 5 to section 2806 of the Public Health Law and amended subdivision 2 of section 2810 of the same law. Section 2806 (subd 5, par [a]) provides for the revocation, suspension or annulment of an operating certificate after a hearing where the holder thereof has been convicted of an industry-related felony. The hearing is strictly limited to a determination of whether a judgment of conviction with respect to an industry-related felony has been entered (par [c]), and provides that the hearing shall be held within 15 days after notification of convictions (par [d]). Plaintiff was advised that, pursuant to subdivision 5 of section 2806, the Health Department was initiating a hearing to determine whether his operating certificate should be revoked, suspended, limited or annulled. By order to show cause signed on December 29, 1977, plaintiff commenced this declaratory judgment action for a judgment enjoining any administrative proceeding pursuant to subdivision 5 and declaring that application of subdivision 5 and of section 2810 (subd 2, par a) was illegal as to him. Special Term denied the request for an injunction and ordered that the hearing continue. The first issue raised by this appeal is whether subdivision 5 of section 2806 constitutes an ex post facto law as applied to plaintiff (US Const, art I, § 10). As stated by the United States Supreme Court in *De Veau v Braisted* (363 US 144, 160), "The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts." Plaintiff takes the position that, since his conviction occurred prior to the effective date of subdivision 5, revocation of his operating certificates pursuant thereto constitutes an impermissible additional penalty upon him for his felony conviction. We disagree. Whether subdivision 5 is an ex post facto law depends upon "whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation" *(De Veau v Braisted, supra,* p 160). The plaintiff in *De Veau* had pleaded guilty in 1920 to grand larceny and had received a suspended sentence. In 1956, the District Attorney threatened that anyone collecting dues on behalf of the union which the plaintiff was an officer of would be prosecuted by reason of section 8 of the New York Waterfront Commission Act which prohibited a person from collecting union dues if convicted of a felony. Although section 8 was enacted in 1953, the Supreme Court upheld the law, stating that (p 160) "New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront, and for the effectuation of that scheme it became important whether individuals had previously been convicted of a felony." In the case at bar, similarly, subdivision 5 seeks not to punish plaintiff for his past acts, but rather aims to regulate a "present situation" in the nursing home industry *(De Veau v Braisted, supra,* p 160; see Governor's Memorandum of Approval, NY Legis Ann, 1977, p 315). Thus, whether plaintiff was technically convicted on June 21, 1977, the date he pleaded guilty, or on August 18, 1977, the date he was sentenced, becomes irrelevant. The second issue is

whether the requirement that a hearing be held within 15 days after notification of conviction is mandatory or merely directory. Section 2806 (subd 5, par [d]) states that a hearing "shall" be held within 15 days after notification of conviction. Plaintiff argues that the Legislature intended the time limitation to be mandatory because it used the word "shall". Whether a given provision in a statute is mandatory or directory primarily depends upon the legislative intent, and the fact that the word "shall" is used does not necessarily mean that the statute is mandatory (see McKinney's Cons Laws of NY, Book 1, Statutes, § 171). We conclude that the purpose of the 15-day period was not to provide procedural safeguards for nursing home operators convicted of felonies, but rather to insure their swift removal (see Governor's Memorandum of Approval). Furthermore, plaintiff has not demonstrated that he was prejudiced by respondent's failure to act within 15 days (see *Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.*, 35 NY2d 371, 380-381). Thus, we agree with Special Term's conclusion that the time limitation was merely directory rather than mandatory. The final issue is whether plaintiff's certificate of relief from disabilities and forfeitures precludes revocation of his operating certificates. Subdivision 2 of section 701 of the Correction Law provides that "a conviction of a crime or of an offense specified in a certificate of relief from disabilities shall not cause automatic forfeiture of any license, permit, employment or franchise [or] be deemed to be a conviction within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege, covered by the certificate." Plaintiff contends that the automatic forfeiture sanctions contemplated by subdivision 5 are barred by virtue of his certificate. Plaintiff errs, however, in assuming that the forfeiture provisions are automatic. In *Matter of Yannett v Berman* (65 AD2d 667) we reviewed the procedures of subdivision 5 of section 2806 and concluded that (p 667) "At the conclusion of the hearing, and upon the evidence admitted thereat, respondents were clearly enabled to exercise their *discretion* reasonably and properly in determining whether petitioner's felony conviction was of the type which mandated action regarding his [operating] certificate and what sanctions should be imposed in view of the nature and seriousness of the felony" (emphasis supplied). Thus, far from being an automatic forfeiture, revocation of an operating certificate pursuant to subdivision 5 rests upon the sound discretion of respondent. Directly applicable, therefore, is subdivision 3 of section 701 of the Correction Law, which in part provides that a certificate of relief does not prevent an administrative body from relying on a conviction specified therein as the basis for the exercise of its "discretionary power" to revoke a license or permit. We have examined plaintiff's other contentions and find them to be without merit. Judgment affirmed, without costs. Greenblott, J. P., Staley, Jr., Main, Mikoll and Herlihy, JJ., concur. [92 Misc 2d 922.]