OPINION OF THE COURT
 

 Titone, J.
 

 In 1987, Governor Cuomo signed into law the Ethics in Government Act (Act) (L 1987, ch 813), a sweeping reform measure designed to "enhance public trust and confidence in our governmental institutions” (Governor’s Program Bill Mem, Bill Jacket, L 1987, ch 813). Among the key features of the Act were its strengthened "revolving door” provisions,
 
 *604
 
 which imposed new and expanded restrictions on the business and professional activities of certain former government employees following their separation from State service. Plaintiffs, all former State officers or employees who left State service before the Act’s effective date, commenced these actions to challenge the opinion of the Ethics Commission that the new "revolving door” provisions were intended to apply to them. Plaintiffs have also challenged the new provisions on several constitutional grounds, including a claimed violation of their rights to equal protection and due process. We conclude that the Ethic Commission’s opinion on the statute’s applicability correctly reflects the Legislature’s intention and that, with one significant exception, plaintiffs’ constitutional claims are lacking in merit. Accordingly, we affirm the Appellate Division orders denying plaintiffs relief.
 

 I. Legislative Background
 

 New York’s first conflict of interest law was enacted in 1954 (L 1954, ch 695) in response to the conclusions of the Special Legislative Committee on Integrity and Ethical Standards in Government (Mar. 9, 1954, reprinted in 1954 NY Legis Doc No. 39). This legislation was then considered to be a pioneering effort to address the abuse of public office for private financial gain
 
 (see,
 
 Note,
 
 Curbing Influence Peddling in Albany: The 1987 Ethics in Government Act,
 
 53 Brooklyn L Rev 1051, 1056, n 12 [hereinafter Note,
 
 Curbing Influence Peddling]).
 
 Significant revisions were considered and made in subsequent years
 
 (see, L
 
 1965, ch 1012; Special Committee on Ethics, Report to Legislature, Mar. 1964, reprinted in 1964 NY Legis Doc No. 42). However, by the 1980’s, New York had lost its position of leadership in the area of ethics-in-government legislation
 
 (see,
 
 State-City Commission on Integrity in Government, Staff Report on Conflict of Interest and Financial Disclosure Law in New York, at 1 [Oct. 8, 1986]). In the mid-1980’s, a series of corruption scandals involving New York City government focused public attention on the need for reform
 
 (see,
 
 Note,
 
 Curbing Influence Peddling, op. cit.,
 
 at 1052-1053, & nn 2-4). The 1987 Ethics in Government Act represents the product of a two-year effort by the Governor and Legislature to reach an acceptable compromise among the important competing concerns, most notably the need to impose stricter controls while, at the same time, ensuring that government service does not become so unattractive that
 
 *605
 
 talented individuals are deterred from entering government service.
 

 The 1987 Act imposed enhanced restrictions on the ability of incumbent public officials, including legislators, to represent clients and appear before State and, in some instances, municipal agencies
 
 (see,
 
 Public Officers Law § 73 [2], [7];
 
 see also,
 
 § 73 [3], [4] [a]). Similar restrictions were imposed, for the first time, on political party chairpersons in large cities (§73 [4] [b]; [7] [b]). Additionally, the Act established new financial disclosure requirements
 
 (see,
 
 § 73-a) and created a permanent State Ethics Commission to administer and enforce the provisions governing State officers and employees
 
 (see,
 
 Executive Law § 94).
 
 [1]
 
 This appeal concerns the Act’s new "revolving door” rules, which limit the business and professional activities of
 
 former
 
 government officials.
 

 II. The Act’s "Revolving Door” Provisions
 

 In general, the purpose of "revolving door” provisions such as those at issue here is to prevent former government employees from unfairly profiting from or otherwise trading upon the contacts, associations and special knowledge that they acquired during their tenure as public servants
 
 (see,
 
 Note,
 
 Curbing Influence Peddling, op. cit,
 
 at 1062;
 
 see also,
 
 ABA Committee on Ethics and Professional Responsibility, Formal Opn No. 342 [1975], reprinted in ABA, Formal and Informal Opinions, Standing Committee on Ethics and Professional Responsibility 110, 120). The underlying premise is that "[former officers should not be permitted to exercise undue influence over former colleagues, still in office, in matters pending before the agencies [and] they should not be permitted to utilize information on specific cases gained during government service for their own benefit and that of private clients. Both are forms of unfair advantage” (Pub L 95-521 [Ethics in Government Act], Sen Rep No. 95-170, reprinted in 1978 US Code, Cong & Admin News 4216, 4247).
 

 New York’s first "revolving door” rules applied only to State officers and employees within the executive branch (Public Officers Law § 73 [former (4)]). In 1965, the coverage of the "revolving door” rules was somewhat expanded (L 1965, ch
 
 *606
 
 1012, § 2, as amended by L° 1968, ch 420, § 244, codified at Public Officers Law § 73 [former (7)]). Under the "revolving door” provisions that existed just prior to the enactment of the 1987 Ethics in Government Act, former heads and deputy heads of regulatory agencies were prohibited from receiving contingency fees for appearing before their former agencies on a variety of matters, and all former State officers and employees were prohibited from appearing before their former agencies on matters in which they had been directly involved, but only for a period of two years after their separation from State service
 
 (see,
 
 Public Officers Law § 73 [former (7)]). Former legislators could not receive compensation for their appearances before the Legislature, but no similar restrictions were imposed on former legislative employees
 
 (id.).
 

 The 1987 Act tightened these restrictions in several important respects. For the first time, certain former legislative employees, i.e., those covered by the financial disclosure requirements of Public Officers Law § 73-a, were barred from engaging in lobbying, for compensation, on matters in which they were directly involved during their tenure with the Legislature (Public Officers Law § 73 [8]). This prohibition, however, applies only for the remainder of the legislative term in which the employee’s service to the Legislature was terminated
 
 (id.).
 

 [2]
 

 In contrast, the duration of the statutory ban on severed executive branch employees
 
 [3]
 
 practicing before their former agencies on matters in which they were directly involved during their government service was extended to a lifetime disqualification
 
 (id.).
 
 Further, a new postemployment limitation was added which prohibits such employees from appearing or practicing before their former agencies "in relation to
 
 any
 
 case, proceeding or application or other matter” for a period of two years after their State service has been terminated (emphasis supplied).
 

 
 *607
 
 III. Applicability
 

 The new Ethics in Government Act was signed into law on August 7, 1987, but its effective date was postponed until January 1, 1989 (L 1987, ch 813, §26). With respect to the "revolving door” provisions governing legislative employees, however, the Act was made applicable "only to such employees who terminate their service or employment on or after January [1, 1989]” (L 1987, ch 813, § 26 [a]).
 

 On November 8, 1988, the Ethics Commission, in its first advisory opinion issued pursuant to Executive Law § 94 (15), construed these applicability provisions in response to requests by several affected individuals (Ethics Commission Advisory Opn 88-1). Relying in part on the existence of the special provision for former legislative employees, the Commission concluded that all others, most notably former executive branch employees, were to be covered by the new "revolving door” strictures imposed by Public Officers Law § 73 (8) regardless of whether they left State service before or after the Act’s effective date. The Commission noted, however, that the new restrictions would be applied "only to those post-employment activities engaged in on or after January 1, 1989”
 
 (id.).
 

 IV. The Present Proceedings
 

 Plaintiff Forti had been employed as an attorney within the State Department of Environmental Conservation until September of 1988, when he accepted employment with a private law firm as the head of the firm’s newly created environmental law division. Following the announcement of Advisory Opinion 88-1, Forti commenced an action seeking a declaration that, contrary to that Opinion, Public Officers Law § 73 (8) applies only to those former executive branch employees who left State service
 
 on or after
 
 January 1, 1989 or, in the alternative, that the statute’s two-year ban on all practice before the severed executive branch employee’s former agency is unconstitutional under the Equal Protection and Due Process Clauses of the State and Federal Constitutions (US Const 5th, 14th Amends; NY Const, art I, §§ 6, 11). Forti also sought a declaration that, as applied to attorneys and all other "officers of the Courts of the State of New York,” Public Officers Law § 73 (8), in its entirety, violates the separation of powers doctrine and, for that reason, is unconstitutional.
 

 On Forti’s motion for summary judgment, the Supreme
 
 *608
 
 Court, Albany County, concluded that Advisory Opinion 88-1 was correct as a matter of statutory construction, but that, as applied to individuals such as Forti who had left State service before its effective date, Public Officers Law § 73 (8) was unconstitutional. Specifically, after characterizing the statute as "retroactive” legislation impairing an admitted attorney’s "vested” right to practice his or her profession, the court concluded that the distinctions drawn between former legislative and former executive branch employees were not supported by sufficiently persuasive reasons to satisfy the requirements of equal protection. On appeal, however, the Appellate Division reversed. In a lengthy and carefully reasoned opinion, the court concluded that plaintiff Forti had not demonstrated the statute to be unconstitutional
 
 (see,
 
 147 AD2d 269). Thereafter, Forti took an appeal as of right to this court pursuant to CPLR 5601 (b) (1), claiming the direct involvement of a substantial constitutional question.
 

 In
 
 Kuttner v Cuomo,
 
 the other action considered herein, the plaintiffs are all attorneys who were employed within State agencies but who left State service for private practice before January 1, 1989. Proceeding by order to show cause, the
 
 Kuttner
 
 plaintiffs sought declaratory relief similar to that sought in the
 
 Forti
 
 action. In addition to claiming that Public Officers Law § 73 (8) was not intended to be applied to them and was, as so applied, violative of their rights under the Due Process, Equal Protection and Ex Post Facto Clauses of the State and Federal Constitutions, the
 
 Kuttner
 
 plaintiffs complained that the statute constitutes an improper delegation of authority in that it fails to prohibit State agencies from adopting even more restrictive rules for its former employees. Further, they challenged the provisions of Public Officers Law §73 (14), which give the Ethics Commission the discretion to determine which violations of the "revolving door” rules should be prosecuted as class A misdemeanors.
 

 On plaintiffs’ motion for a preliminary injunction against enforcement of the new statute, the Supreme Court, Albany County, concluded that they were likely to succeed on the merits of their claim that the new restrictions in section 73 (8) were inapplicable to them, since, despite Advisory Opinion 88-1, there was no "clear expression of a legislative intent to make [the statute] retroactive.” Further, noting its view that the new law "would be ex post facto” if applied to plaintiffs, the court found that they would be irreparably harmed if preliminary injunctive relief were not granted, because the
 
 *609
 
 restrictions on their ability to practice would substantially diminish their value to their present private employers and they would be faced with the choice of either terminating their current professional activities or risking criminal prosecution.
 

 As in the
 
 Forti
 
 action, the Appellate Division concluded in the
 
 Kuttner
 
 appeal that section 73 (8) was properly deemed applicable to individuals in plaintiffs’ position and did not violate the constitutional Equal Protection or Due Process Clauses. The court further determined that plaintiffs were not likely to succeed either on their ex post facto claim or on their contention that the Legislature had improperly delegated rule-making authority. While it noted that plaintiffs might well succeed on their contention that the discretion afforded the Ethics Commission under section 73 (14) improperly infringed upon the authority vested in the State’s prosecutors, it held that preliminary injunctive relief was nonetheless not warranted on that claim, since no criminal prosecutions were threatened and, consequently, there was no imminent "irreparable harm”
 
 (see,
 
 147 AD2d 215). Following the issuance of its order denying a preliminary injunction, the Appellate Division granted the
 
 Kuttner
 
 plaintiffs leave to appeal to this court, certifying the following question of law: "Did this court err as a matter of law in reversing the order of Supreme Court granting plaintiffs’ motion for a preliminary injunction restraining defendants from enforcing Advisory Opinion 88-1 of the State Ethics Commission and in denying such motion?”
 

 V. Analysis
 

 Applicability of Section 73 (8)
 

 At the outset, we note our agreement with the Appellate Division’s conclusion (147 AD2d, at 275) that application of Public Officers Law § 73 (8) to former State employees who left State service before January 1, 1989 does not render that statute "retroactive” in any true sense of that term. As construed by Advisory Opinion 88-1, the statute merely prohibits a class of individuals from engaging in certain specified business and professional activities
 
 after
 
 the statute’s effective date. "A statute is not retroactive * * * when made to apply to future transactions merely because such transactions relate to and are founded upon antecedent events” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51,
 
 *610
 
 at 87).
 
 [4]
 
 Thus, contrary to plaintiffs’ arguments, the principles of statutory construction which require clear expression of a legislative intention to make a new provision retroactive
 
 (see, e.g., Shielcrawt v Moffett,
 
 294 NY 180;
 
 Jacobus v Colgate,
 
 217 NY 235;
 
 Murphy v Board of Educ.,
 
 104 AD2d 796,
 
 affd
 
 64 NY2d 856;
 
 see also,
 
 McKinney’s Statutes § 51, at 89) are inapplicable here.
 

 Construing the terms of the 1987 Ethics Act, including its applicability provisions, according to their plain and natural import, we conclude that the Legislature did intend the new "revolving door” rules set forth in Public Officers Law § 73 (8) to be applicable to plaintiffs and other former executive branch employees who left State service before January 1, 1989. First, the statutory prohibitions, which were to become effective on that date, were made applicable to any "person who
 
 has served
 
 as a state officer or employee”
 
 (id.).
 
 Thus, on its face, the new statute encompassed employees who had previously served the State, as well as those who would become "former” employees in the future. Second, the express exemption for legislative employees who left State service before January 1, 1989 (L 1987, ch 813, § 26 [a]) furnishes strong proof that other State workers whose employment was terminated before that date
 
 were
 
 intended to be included. Third, as the Appellate Division observed, the absence of a savings clause — or at least a specific legislative provision for a separate set of rules to govern former executive branch employees whose service was severed at some earlier point— further supports the conclusion that such employees were intended to be covered under Public Officers Law § 73 (8). Indeed, the alternative conclusion would leave such employees completely without statutory restrictions on their post-January 1, 1989 professional and business activities, a result that is logically unacceptable in light of the formerly applicable statutory restrictions
 
 (see,
 
 Public Officers Law § 73 [former (7)]), which were impliedly repealed by the 1987 Act, and the clear over-all legislative intention to tighten, rather than loosen, those restrictions.
 

 
 *611
 
 Finally, contrary to plaintiffs’ contentions, there is nothing harsh or unreasonable about the application to plaintiffs of the new lifetime ban on appearing or otherwise practicing before their former agencies in connection with a matter in which they directly participated during their State tenure. The ban is designed to prevent former public servants from falling prey to one form of conflict of interest, or to the appearance of a conflict, and from taking unfair advantage of their insider’s knowledge and contacts, including the confidences and secrets they may have gained while working on the matter on behalf of the State. Indeed, all admitted attorneys within this State, including plaintiffs, have long been subject to such a restriction under DR 9-101 (B) of the Code of Professional Responsibility. The new provisions of section 73 (8) merely extend this reasonable limitation to nonattorneys formerly employed within the executive branch. Furthermore, any hardship resulting from plaintiffs’ prior engagement on forbidden matters has been mitigated by the Legislature’s decision to postpone the statute’s effective date for almost 17 months after its enactment, thereby enabling individuals such as plaintiffs, as well as their clients, to make suitable alternative arrangements.
 

 Equal Protection
 

 Having concluded that Public Officers Law § 73 (8) was intended to apply to former executive branch employees in plaintiffs’ position, we must now consider plaintiffs’ contention that such application violates their rights under the State and Federal Constitutions. Plaintiffs’ principal argument rests on the disparate treatment that the new "revolving door” law accords to former executive, as distinguished from former legislative, employees. As previously noted, the latter are afforded certain advantages over the former, most notably, the rights to engage in most lobbying activities immediately after the termination of their service and to lobby even with respect to matters in which they were directly involved after the completion of the legislative term in which such termination occurred. Further, as a result of the special applicability provision, legislative employees, but not executive branch employees, had the opportunity to avoid the reach of the new "revolving door” provisions entirely by simply leaving their State positions before January 1, 1989
 
 (see,
 
 L 1987, ch 813, §26 [a]). Plaintiffs argue that these disparities violate their rights to equal protection of the laws.x
 

 
 *612
 
 Initially, we note that to succeed in their argument plaintiffs must demonstrate the absence of a rational basis for the disparities of which they complain
 
 (see, Maresca v Cuomo,
 
 64 NY2d 242). Plaintiffs have not demonstrated that the statute burdens any identifiable "suspect” class. Nor have they shown that they have a fundamental right to engage in the unrestricted practice of their profession. To the contrary, although admitted attorneys have a protected due process interest in the right to practice law
 
 (see, Willner v Committee on Character,
 
 373 US 96, 102), that right is clearly subject to reasonable restrictions imposed by the legislative, judicial and executive branches of government. As several courts have already held, statutes or rules imposing such restrictions are subject to review, but only under the least exacting constitutional standard requiring a rational basis for the restriction
 
 (Edelstein v Wilentz,
 
 812 F2d 128;
 
 Nordgren v Hafter,
 
 789 F2d 334, 338, n 2,
 
 cert denied
 
 479 US 850;
 
 Lupert v California State Bar,
 
 761 F2d 1325, 1327, n 2,
 
 appeal dismissed
 
 474 US 916;
 
 cf., Matter of Gordon,
 
 48 NY2d 266). Accordingly, we reject plaintiffs’ argument that a level of constitutional scrutiny higher than the rational basis test should be applied here
 
 (see, Kadrmas v Dickinson Pub. Schools,
 
 487 US 450;
 
 Vance v Bradley,
 
 440 US 93, 96-97;
 
 Massachusetts Bd. of Retirement v Murgia,
 
 427 US 307, 312;
 
 Winkler v Spinnato,
 
 72 NY2d 402, 406,
 
 cert denied
 
 — US —, 109 S Ct 1640).
 
 [5]
 

 Under that test, the disparate treatment challenged here may readily be justified. First, the Legislature could rationally conclude that the risk of undue influence, or the appearance thereof, resulting from prior State service is significantly greater in the case of former executive branch employees. As the Appellate Division observed, the influence that any one individual may have on the outcome of a particular legislative matter is diluted by a number of institutional factors, none of which are present in the decision-making processes that exist within the executive branch. Among these factors are the internal checks and balances supplied by the requirements
 
 *613
 
 that a bill be passed by two separate legislative houses and signed by the Governor before it becomes effective. Also relevant are the facts that each legislator is personally accountable to his or her constituency and that the Legislature itself is reconstituted every two years with an attendant change in membership, political orientation and priorities.
 

 Those same institutional safeguards are not present in the administrative agencies that employ most of the State’s executive branch workers. In contrast to the diffused decision-making process in the Legislature, many of the matters that come before State administrative agencies, such as license applications and the awarding of contracts, are resolved by one official or a small handful of officials, acting within their broad discretionary authority. Further, the tenure of administrative agency officials does not depend upon the approval of the electorate, many are protected by civil service laws and the myriad of routine decisions these officials make rarely draw the attention of the news media. Finally, the continuity of personnel that distinguishes administrative agencies from the legislative offices makes the former vulnerable to the evils inherent in cronyism and influence peddling.
 

 For all of these reasons, a legislative decision to impose more stringent controls on the postemployment activities of former employees of State administrative agencies cannot be characterized as irrational. While the legislative branch is certainly not immune from many forms of influence peddling, there was adequate basis for the Legislature to conclude that administrative agencies are more susceptible to the ethical problems associated specifically with "revolving door” employment and was therefore in need of more restrictive "revolving door” rules. The Legislature is certainly entitled to consider that "[e]vils in the same field may be of different dimensions and proportions,” so that different remedies are required
 
 (Williamson v Lee Opt Co.,
 
 348 US 483, 489). Additionally, in fashioning a remedy for a perceived evil, the Legislature may "take one step at a time, addressing itself to the phase of the problem which seems most acute”
 
 (id.).
 

 In this instance, differential treatment was justifiable not only because of fundamental institutional differences, but also because of the unique practical situation in which many former legislative employees are placed. Unlike their executive branch counterparts, such employees are unprotected by civil service or tenure rules and face the possibility of sudden
 
 *614
 
 job loss through the death, retirement or electoral defeat of the legislative member who employs them. Moreover, their job prospects upon severance are limited by the fact that the skills and knowledge they have developed in State service relate specifically to the legislative process and may not translate readily into the skills and knowledge required by equivalent private sector jobs. In light of these circumstances, our State Legislature might well have concluded, as did the congressional committee that drafted the 1988 proposal for "revolving door” reform at the Federal level, that "an overly severe ['revolving door’] prohibition * * * has a more punitive impact on Legislative Branch personnel than a similar ban on an Executive Branch employee” (Committee of Judiciary, Report on HR 5043, at 18-19). And, in weighing the various competing considerations, our Legislature could rationally have determined that the consequent impairment of its future ability to recruit talented staff was a serious enough problem to warrant relaxing the postemployment restrictions on legislative personnel
 
 (see, id.).
 

 Due Process
 

 Plaintiffs also seek a judicial declaration that Public Officers Law § 73 (8) violates their constitutional due process rights. Plaintiffs’ primary contention in this regard is that the "revolving door” provisions prevent them from exercising their rights to pursue their professional careers. However, the new rules do not interfere with the ability of plaintiffs, all of whom are attorneys, to practice law. They merely forbid them from accepting employment in a limited class of cases that poses the greatest potential for the unfair exploitation of the contacts they made, and the knowledge they obtained, during their State service. Such a restriction, which is reasonably related to the legislative goal of restoring public confidence in government, does not violate any protected property or liberty interest
 
 (see, Hasenbein v Siebert,
 
 56 NY2d 853), even if, as a practical matter, it may reduce plaintiffs’ professional marketability.
 

 Plaintiff Forti’s alternative due process argument is equally unpersuasive. Forti contends that his vested rights have been impaired because, as applied to him pursuant to Advisory Opinion 88-1, Public Officers Law § 73 (8) alters a term or condition of his State employment, namely his right to pursue postemployment professional opportunities subject only to the restrictions imposed by the earlier version of the
 
 *615
 
 statute (Public Officers Law § 73 [former (7)]). The flaw in this argument is that, absent a contractual arrangement or some other source for the claimed right, plaintiff had no vested interest in, or reasonable expectation in the continuance of, the pre-1989 rules governing his permissible postemployment activities
 
 (see generally; Cook v City of Binghamton,
 
 48 NY2d 323). Although Forti had executed a certification in which he agreed to abide by the "revolving door” rules that existed at the time he was hired
 
 (see,
 
 Public Officers Law former § 78), nothing in that certification implied a limitation on the Legislature’s right to take further steps to address the problem of actual and potential conflicts of interest. Thus, the Legislature was free to reexamine its former policies and impose more severe postemployment restraints.
 

 Separation of Powers
 

 Plaintiffs have also raised a number of arguments, all of which involve, in one way or another, the doctrine of separation of powers. The first two of these arguments are readily disposed of. Plaintiff Forti’s separation of powers claim rests on the erroneous assumption that only the judiciary may regulate the practice of law, so that any legislative attempt to impose restrictions on attorneys’ practices would be a usurpation of judicial power. In fact, the Legislature can — and does— regulate many aspects of the practice of law in this State
 
 (see,
 
 Judiciary Law art 15). Indeed, the very power of this court to prescribe rules for the admission of attorneys is derived from the Legislature
 
 (see,
 
 Judiciary Law § 53;
 
 see also,
 
 § 90 [authorizing the Appellate Divisions to administer character and fitness, as well as disciplinary, procedures]). Moreover, Public Officers Law § 73 (8) is not directed specifically at admitted attorneys but rather is aimed at all former executive branch employees. Its effect on the practice of law is, thus, merely incidental.
 

 The separation of powers argument raised by the plaintiffs in the
 
 Kuttner
 
 appeal is based on the entirely different premise that the final sentence of Public Officers Law §73 (8), which permits State agencies to adopt even more restrictive "revolving door” rules to govern practice before them, represents an unconstitutional delegation of legislative authority. However, our decision in
 
 Matter of Nicholas v Kahn
 
 (47 NY2d 24) establishes the general proposition that the Legislature may constitutionally authorize administrative agencies to promulgate their own specialized conflict of inter
 
 *616
 
 est rules. Inasmuch as plaintiffs have not cited any specific objectionable regulations promulgated under section 73 (8), we have no occasion to consider whether the legislative standards underlying the rules are sufficient
 
 (see, e.g., Matter of Nicholas v Kahn, supra,
 
 at 31-32) or whether the rules fall outside the scope of the authority that the Legislature may permissibly delegate
 
 (see generally, Boreali v Axelrod,
 
 71 NY2d 1).
 

 The final argument advanced by the
 
 Kuttner
 
 plaintiffs stands on somewhat stronger footing. The argument concerns the constitutional propriety of Public Officers Law § 73 (14), which provides for civil penalties for violations of several of the statute’s other subdivisions, including subdivision (8). In addition, section 73 (14) provides that, "in lieu of a civil penalty,” the Ethics Commission may "refer a violation of any [of the specified] subdivision^] to the appropriate prosecutor and upon such conviction,
 
 but only after such referral,
 
 such violation shall be punishable as a class A misdemeanor” (emphasis supplied).
 

 The Appellate Division concluded in the
 
 Kuttner
 
 appeal, which involved only the question of preliminary injunctive relief, that the plaintiffs were likely to succeed on the merits of their claim that this provision was violative of the separation of powers doctrine. After determining initially that the question was justiciable because plaintiffs were potentially subject to criminal prosecution if they violated Public Officers Law § 73 (8), the court observed that the challenged provision, fairly read, gives the respective Ethics Commissions the exclusive power to decide, in the first instance, who shall be criminally prosecuted. As such, the Appellate Division concluded, the provision results in an encroachment on the power of the executive branch, as represented specifically by the State’s prosecutors, to ensure "that the laws are faithfully executed” (NY Const, art IV, § 3;
 
 see, People v Di Falco,
 
 44 NY2d 482, 486).
 

 Like the court below, we conclude that section 73 (14)’s provisions for criminal prosecutions
 
 only
 
 upon referral by the Ethics Commission are highly troublesome. In addition to the constitutional criticism identified by the Appellate Division, there is an apparent inconsistency, which has already drawn some comment, between section 73 (14) and the constitutional directive that "[t]he power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connec
 
 *617
 
 tion with such inquiries, shall never be suspended or impaired” (NY Const, art I, § 6) (L 1987, ch 813, Bill Jacket, Letter of District Attorney of Kings County, July 24, 1987, at
 
 2; id.,
 
 Letter of District Attorneys Association, July 15, 1987, at 1-2;
 
 see also, id.,
 
 Report of Division of Budget, July 29, 1987, at 3; Letter of NY Public Interest Research Group, July 3, 1987, at 3;
 
 id.,
 
 Mem from Secretary of State, July 27, 1987, at 2;
 
 id.,
 
 Letter from New York State Office for Aging, Aug. 6, 1987, at 1;
 
 id.,
 
 Mem of Department of Law, July 7, 1987, at 4;
 
 id.,
 
 Mem from Counsel to Higher Education Services Corporation to Governor’s Counsel, Aug. 3, 1987, at 2 [all criticizing soundness and/or constitutionality of provision on other grounds]).
 

 The procedural posture in which the issue is presented prevents us from squarely deciding it in the context of the
 
 Kuttner
 
 appeal, which is based on a certified question, since, in any event, our resolution would not be "decisive” of the correctness of the nonfinal Appellate Division order before us
 
 (see generally, Patrician Plastic Corp. v Bernadel Realty Corp.,
 
 25 NY2d 599). As previously noted, the Appellate Division denied the
 
 Kuttner
 
 plaintiffs the preliminary injunctive relief they sought, not because it disagreed with them on the merits of their legal claim, but rather because it concluded that such relief was unnecessary in light of the absence of an imminent threat of prosecution. We find no error of law in this dispositive conclusion and, accordingly, can go no further
 
 (see, Brady v Ottaway Newspapers,
 
 63 NY2d 1031;
 
 cf., Herzog Bros. Trucking v State Tax Commn.,
 
 69 NY2d 536, 540-541).
 

 VI. Conclusion
 

 To summarize, we hold that the Ethics Commission correctly concluded that Public Officers Law § 73 (8) is applicable to former executive branch employees whose State service was terminated before January 1, 1989. We further hold that the more favorable treatment afforded under the statute to former legislators and legislative employees does not violate plaintiffs’ constitutional right to equal protection of the law. Similarly, the limited restrictions on plaintiffs’ rights to practice before State administrative agencies do not constitute violations of their due process rights or the rights afforded by the Ex Post Facto Clause of the United States Constitution (US Const, art I, § 10, cl [1]). Finally, while the
 
 Kuttner
 
 plaintiff’s claims with regard to the constitutionality of Public Officers Law § 73 (14)
 
 *618
 
 have merit, we cannot say that the denial of preliminary injunctive relief was infected by error of law or an abuse of discretion under the circumstances of this case.
 

 Accordingly, in
 
 Forti v New York State Ethics Commn.,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 In
 
 Kuttner v Cuomo,
 
 the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
 

 In
 
 Forti v New York State Ethics Commn.:
 
 Order affirmed, with costs.
 

 In
 
 Kuttner v Cuomo:
 
 Order affirmed, etc.
 

 [1]
 

 . The Legislative Ethics Committee, established pursuant to Legislative Law § 80, was to act as the ethical watchdog for the legislative branch of government
 
 (see,
 
 Public Officers Law § 73 [14]).
 

 [2]
 

 . Former supervisory legislative employees who were "not personally involved in the * * * matter to an important and material degree” may receive an exemption from this restriction upon approval of the Legislative Ethics Committee (Public Officers Law § 73 [8]). The 1987 Act left the "revolving door” restrictions imposed on former legislators entirely unchanged
 
 (compare, id,., with
 
 Public Officers Law § 73 [former (7)]).
 

 [3]
 

 . Public Officers Law § 73 (8) refers to "state officers and] employee[s],” a class that includes most, if not all, nonelected executive branch employees who receive compensation and are not employed on a per diem basis
 
 (see,
 
 Public Officers Law § 73 [1] [i] [i]-[iv];
 
 see also,
 
 § 73-a [1] [c] [i]-[iii]).
 

 [4]
 

 . For the same reason, we conclude that Public Officers Law § 73 (8), as applied to plaintiffs, does not constitute an ex post facto law in violation of the United States Constitution (US Const, art I, § 10, cl [1];
 
 see, People v Morse,
 
 62 NY2d 205, 217-218). Accordingly, we need not consider whether the restrictions on professional activities imposed by the statute are within the class of punitive measures contemplated by the Ex Post Facto Clause
 
 (see, Garner v Los Angeles Bd.,
 
 341 US 716;
 
 United States v Nasser,
 
 476 F2d 1111).
 

 [5]
 

 . We are not persuaded by plaintiff Forti’s novel argument that a higher level of scrutiny should be applied when a measure adopted by the Legislature favors that branch’s own members and employees over the employees of other branches of government. While such measures may indeed create "[t]he appearance, if not the reality[,] of legislative self-favoritism,” as plaintiff contends, the electorate, and not the judiciary, is the proper body to perceive and then correct any overreaching that may have occurred.