OPINION OF THE COURT
 

 Levine, J.
 

 On November 7, 1991, the New York State Commissioner of Health received a report that petitioner Patricia Miller, a certified nurse aide employed at the Greenpark Care Center in
 
 *787
 
 Brooklyn, had abused a patient in her care. Specifically, the report alleged that petitioner had "hit [a] patient in her right eye causing her to sustain a bruise.” Following an investigation, the Commissioner decided that sufficient credible evidence existed to support the allegation of patient abuse and, on March 20, 1992, issued a written determination to that effect. Petitioner subsequently was notified of that determination and informed that she had the right to contest the accuracy of the findings and request an administrative fair hearing. Petitioner also was advised that unless the written determination was expunged, the finding of abuse would be forwarded to the agency responsible for maintaining the New York State Nursing Home Nurse Aide Registry, and made available for public disclosure after issuance of the Commissioner’s final order.
 

 Pursuant to Public Health Law § 2803-d (6) (d), petitioner requested a fair hearing, challenging the Commissioner’s written determination. At the conclusion of the hearing, at which the patient and petitioner both testified, the Administrative Law Judge (ALJ) recommended that the Commissioner’s written determination of patient abuse be annulled and the record expunged. In finding that the determination was "not supported by the evidence,” the ALJ noted that, although petitioner’s hand may have come in contact with the patient’s eye, there was no evidence that petitioner intended "to hit or punch or otherwise knowingly [do] what she is charged with doing, that is to hit the patient.”
 

 The Commissioner rejected the ALJ’s proposed findings and conclusion, made contrary findings and sustained the charge of patient abuse against petitioner. On December 2, 1994, the Commissioner’s determination was forwarded to the office of Health Systems Management for placement in the Registry. Thereafter, as mandated by 10 NYCRR 415.4 (b) (1) (ii) (6) (adopted eff Apr. 1, 1992), the Greenpark Care Center terminated petitioner’s employment.
 

 Petitioner then instituted this hybrid CPLR article 78 proceeding and declaratory judgment action objecting to the Commissioner’s alleged retroactive enforcement of the regulatory provision (as applied to her conduct predating the regulation) prohibiting future employment once a finding of abuse has been entered into the Nurse Aide Registry. In addition, petitioner challenged the Commissioner’s written determination as an abuse of discretion, and not in accordance with substantial evidence. Petitioner also sought a declaration that 10 NYCRR 415.4 (b) (1) (ii) (6) violated her due process rights
 
 *788
 
 (US Const 14th Amend) by requiring her termination upon the entry of a finding of patient abuse in the Registry supported merely by substantial evidence, and further deprived her of equal protection under law
 
 (id.)
 
 since, under this regulation, certified nurse aides are treated differently from licensed health care professionals.
 

 On transfer from Supreme Court, the Appellate Division confirmed the Commissioner’s written determination of patient abuse, finding that it was supported by substantial evidence. Nonetheless, deeming the regulations to have been "retroactively” applied to petitioner, that Court annulled, on the law, so much of the administrative action as prohibited petitioner from employment as a nurse aide, ruling essentially that placement on the Registry was the only legal sanction for her alleged misconduct at the time it was committed (235 AD2d 480). We granted respondents, officials of the State Department of Health, leave to appeal.
 

 We conclude that the regulation was not improperly applied retroactively to petitioner. Instead of directing a reversal, however, we now modify the Appellate Division order and remit to the Commissioner of Health for a new determination on the existing record using a constitutionally required preponderance of the evidence standard of proof.
 
 *
 

 I
 

 Public Health Law § 2803-d requires administrators, physicians and health care professionals, and permits other concerned individuals, to report suspected incidents of abuse or neglect if they "have reasonable cause to believe” that a patient of a residential health care facility had been physically abused, mistreated or neglected by the staff of such facility (Public Health Law § 2803-d [1], [2]). The statute empowers the Commissioner, upon receipt of such a report, to investigate the allegations of patient abuse and, based upon the findings of the investigation, to issue a written determination of whether or
 
 *789
 
 not sufficient credible evidence exists to sustain the allegations
 
 (see,
 
 Public Health Law § 2803-d [6] [a]; 10 NYCRR 81.5;
 
 see also,
 
 Governor’s Mem approving L 1980, ch 340, 1980 McKinney’s Session Laws of NY, at 1865; Mem of Dept of Health, 1980 NY Legis Ann, at 141).
 

 If the Commissioner sustains the allegations, the subject of the investigation may, within 30 days of notification, request that the record be amended or expunged (Public Health Law § 2803-d [6] [d]). If the Commissioner does not comply with such a request, the subject may pursue an administrative fair hearing and seek expungement on the grounds that the record is inaccurate or the written determination is not supported by the evidence
 
 (id.; see also,
 
 10 NYCRR 81.6 [b]). At the fair hearing, the burden of proof is on the Department of Health (Public Health Law § 2803-d [6] [d]) and, as the statute sets forth no specific evidentiary standard, the hearing is governed by the State Administrative Procedure Act which provides:
 

 "[n]o decision, determination or order shall be made except upon consideration of the record as a whole * * * and as
 
 supported by and in accordance with substantial
 
 evidence” (State Administrative Procedure Act § 306 [1] [emphasis supplied]).
 

 If the prior determination is upheld, the Commissioner
 
 shall,
 
 in addition to other penalties prescribed by law, report the finding to the Nurse Aide Registry
 
 (see,
 
 Public Health Law § 2803-d [6] [g]; [7]; § 2803-j [3] [d]; see
 
 also,
 
 42 USC § 1396r [e] [2] [requiring States to establish and maintain a Nurse Aide Registry]; 42 USC § 1396r [g] [1] [C] [requiring States to report findings of abuse, neglect or misappropriation to the State Nurse Aide Registry]; 42 CFR 488.335).
 

 As previously noted, effective April 1, 1992, the State Department of Health promulgated a new regulation for residential care facilities Statewide which specifically prohibits nursing homes from employing nurse aides "who have * * * had a finding entered into the New York State Nurse Aide Registry concerning abuse, neglect or mistreatment of residents or misappropriation of their property” (10 NYCRR 415.4 [b] [1] [ii] [6]). The Department’s regulation, issued to satisfy Medicaid and Medicare participation requirements
 
 (see,
 
 42 CFR 442.100, 430.10), corresponds to a Federal directive promulgated by the Secretary of Health and Human Services which also prohibits the employment of nurse aides under identical circumstances
 
 (see,
 
 42 CFR 483.13 [c] [1] [ii] [B] [eff Apr. 1, 1992];
 
 see also,
 
 56
 
 *790
 
 Fed. Reg 48914 [1991] [stating that it "would be irresponsible * * * to allow nurse aides who have abused or neglected residents * * * to have the opportunity to jeopardize resident safety again”]).
 

 II
 

 We agree with the position of respondents, on their appeal, that the Appellate Division erred in annulling petitioner’s discharge on the ground that it resulted from an improper retroactive application of 10 NYCRR 415.4 to conduct which allegedly occurred prior to the adoption of that provision.
 

 In
 
 Forti v New York State Ethics Commn.
 
 (75 NY2d 596), this Court stated that " '[a] statute is not retroactive * * * when made to apply to future transactions merely because such transactions relate to and
 
 are founded upon antecedent events’ ” (id.,
 
 at 609 [quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 51, at 87] [emphasis supplied]). We held in
 
 Forti
 
 that where the requirements for engaging in specified professional activity are changed to govern
 
 future
 
 professional eligibility, a statute does not operate " 'retroactively]’ in any true sense” even though its application may be triggered by an event which occurred prior to its effective date
 
 (see, id.,
 
 at 609-610;
 
 see also, Matter of Abrams v Brady,
 
 77 NY2d 741, 750-751;
 
 Matter of Allied Grocers Coop. v Tax Appeals Tribunal,
 
 162 AD2d 791, 792-793).
 

 Critical to our determination in
 
 Forti
 
 was that the newly enacted restriction was not intended as punishment for past conduct; rather, the enhanced limitation applied only to then-future transactions notwithstanding that prior conduct might affect, prospectively, those transactions
 
 (see, Forti v New York State Ethics Commn., supra,
 
 at 609-611;
 
 Matter of Allied Grocers Coop. v Tax Appeals Tribunal,
 
 162 AD2d, at 792-793,
 
 supra; Matter of Springer v Whalen,
 
 68 AD2d 1011, 1012,
 
 Iv denied
 
 47 NY2d 710)
 

 The rationale of
 
 Forti
 
 governs the issue of retroactivity here. Public health regulation 10 NYCRR 415.4 prohibits a nursing home from employing individuals "who
 
 have
 
 * * *
 
 had
 
 a finding” of abuse, neglect, mistreatment or misappropriation entered into the State Nurse Aide Registry (10 NYCRR 415.4 [b] [1] [ii] [6] [emphasis supplied]). By its terms, the provision aims to regulate employment
 
 in futuro
 
 by barring residential care facilities from employing any nurse aide who, previously, has been found guilty of patient abuse.
 

 
 *791
 
 Moreover, respondents’ promulgation of 10 NYCRR 415.4 in no way varied the existing definition of patient abuse
 
 {see,
 
 10 NYCRR 81.1 [a]), altered the substantive law governing petitioner’s conduct or changed the procedural scheme by which petitioner could seek redress. In effect at the time of petitioner’s alleged conduct were statutory provisions which (1) required the reporting of patient abuse (Public Health Law § 2803-d [1] — [4]); (2) provided for an opportunity to challenge the Commissioner’s findings, seek expungement, and request a fair hearing (Public Health Law § 2803-d [6] [b], [d]); (3) mandated the listing of sustained findings of abuse in the Nurse Aide Registry (Public Health Law § 2803-d [6] [gj); and (4) authorized the imposition of additional penalties (Public Health Law § 2803-d [7]). Thus, contrary to the conclusion reached below, respondents’ application here of 10 NYCRR 415.4 was not improper merely because petitioner’s alleged disqualifying conduct antedated promulgation of the regulation.
 

 m
 

 Having determined that the regulation was not retroactively applied, we must address petitioner’s contention that the substantial evidence standard of proof contained in section 306 of the State Administrative Procedure Act is constitutionally insufficient as applied in this case. Specifically, she asserts that the Federal Due Process Clause requires the State Department of Health to substantiate a report of patient abuse by a fair preponderance of the evidence prior to forwarding a subject’s name to the Nurse Aide Registry with its resultant discharge from nursing home employment and public disclosure of the finding.
 

 We recognized in
 
 Matter of Lee TT. v Dowling
 
 (87 NY2d 699,
 
 rearg denied sub nom. Matter of Joel P. v Bane,
 
 88 NY2d 920) that there is no constitutional prohibition against the State maintaining a register of those suspected of abuse or maltreatment.
 
 Matter of Lee TT.,
 
 however, holds that the inclusion and dissemination of information contained therein which harms not only an individual’s good name, integrity or standing in the community, but also affects that individual’s present employment or effectively forecloses possible future employment opportunities is sufficient to constitute "stigma plus” and invoke the procedural protection of the Due Process Clause
 
 (see, id.,
 
 at 707-709;
 
 see also, Paul v Davis,
 
 424 US 693, 701;
 
 Board of Regents v Roth,
 
 408 US 564, 572-574;
 
 Valmonte v Bane,
 
 18 F3d 992, 1000-1001 [2d Cir]).
 

 
 *792
 
 Here, as in
 
 Matter of Lee TT.,
 
 there can be little dispute that the governmental action has impaired a constitutionally protected liberty interest. First, placement of a finding against petitioner of patient abuse in the Registry clearly calls into question her reputation, honor or integrity
 
 (see, Matter of Lee TT. v Dowling, supra,
 
 at 708-709;
 
 see also, Board of Regents v Roth,
 
 408 US, at 573,
 
 supra).
 
 Moreover, once a finding has been entered in the Registry, that information is then made accessible to health care providers and future employers (10 NYCRR 415.4), and also to the publi.c-at-large without restriction
 
 (see,
 
 42 USC § 1396r [e] [2] [B]). In this regard, the potential for injury is far greater here than in circumstances where the dissemination of governmental records has been statutorily limited or controlled
 
 (cf., Matter of Lee TT. v Dowling, supra,
 
 at 703;
 
 Valmonte v Bane,
 
 18 F3d, at 1002,
 
 supra).
 
 Thus, by publicly branding petitioner a patient abuser, the State’s action affects not only her occasion for employment in the residential health care industry, but also may well extend to prevent future employment opportunities in any arena, thereby placing a tangible burden on her employment prospects
 
 (see, Matter of Lee TT. v Dowling, supra,
 
 at 709;
 
 Valmonte v Bane, supra,
 
 at 1001-1002;
 
 see also, Paul v Davis,
 
 424 US, at 701,
 
 supra).
 

 Even though entry of a finding in the Registry implicates a protected liberty interest, petitioner must still show that the procedural safeguards established by the State are insufficient to prevent a deprivation of that constitutionally protected interest
 
 (see, Matter of Lee TT. v Dowling, supra,
 
 at 710). Evaluation of the constitutional sufficiency of administrative procedures involves the balancing of three factors: (1) the nature of the private interest affected by the State’s action; (2) the risk of an erroneous deprivation and the effect of additional procedural safeguards; and (3) the governmental interest
 
 (see, Mathews v Eldridge,
 
 424 US 319;
 
 see also, Matter of Lee TT. v Dowling, supra).
 

 Petitioner’s argument in support of her affected private interest is essentially the same argument that supports her liberty interest; i.e., the State’s stigmatizing characterization of her as a patient abuser prohibits not only her present employment, but also effectively forecloses her freedom to take advantage of any other employment within the realm of patient care. We agree that petitioner has a legitimate interest in pursuing employment in her chosen field, and that the stigma of being labeled a patient abuser may well jeopardize
 
 *793
 
 her future employment prospects
 
 (see generally, Greene v McElroy,
 
 360 US 474, 492). As to the countervailing State interest, it is beyond dispute that New York State also has a significant interest in protecting elderly, infirm or disabled persons from the infliction of physical harm by those entrusted with their care
 
 (see, Uzzillia v Commissioner of Health,
 
 47 AD2d 492, 497 [charging the Commissioner with the "awesome burden” of insuring that nursing home patients receive proper care and appropriate protection],
 
 appeal dismissed
 
 37 NY2d 777).
 

 Thus, the decisive factor in this case is the risk of an erroneous deprivation of petitioner’s protected interest through the procedures and safeguards established by the State. The parties do not dispute that the standard of proof necessary to sustain an allegation of patient abuse and forward a subject’s name to the Registry for inclusion thereon is whole-record substantial evidence
 
 (see,
 
 State Administrative Procedure Act § 306 [1]; Public Health Law § 2803-d [6] [d]). Substantial evidence has been defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact”
 
 (300 Gramatan Ave. Assocs. v State Div. of Human Rights,
 
 45 NY2d 176, 180;
 
 see also, Matter of Stork Rest. v Boland,
 
 282 NY 256, 273-274). Although perhaps more exacting than the minimal standard of "some credible evidence” we found deficient in
 
 Matter of Lee TT.,
 
 substantial evidence "is less than a preponderance of the evidence”
 
 (300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,
 
 at 180) and, as a burden of proof, it demands only that "a given inference is reasonable and plausible, not necessarily the most probable” (Borchers and Markell, New York State Administrative Procedure and Practice § 3.12, at 51 [1995];
 
 see also, Matter of Berenhaus v Ward,
 
 70 NY2d 436, 443-444 [as a burden for the trier of fact, the substantial evidence standard may support inconsistent findings];
 
 Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works,
 
 304 NY 65).
 

 Reports of suspected patient abuse are required not only from administrators and health care professionals, but also may be received from
 
 any
 
 individual, whether or not they have specific knowledge of the particular incident. Thus, under the substantial evidence standard, the inclusion of a nurse aide on the Registry can be supported by nothing more than the hearsay evidence giving rise to the Commissioner’s initial investigation
 
 (cf., Matter of Lee TT. v Dowling, supra,
 
 at 711-712). Indeed, at the fair hearing below, the ALJ recognized
 
 *794
 
 that absent objective evidence, a decision to sustain an allegation of abuse may well turn on the fact finder’s subjective assessment of "not only
 
 credibility,
 
 but of
 
 possibility.”
 
 Based upon the foregoing, any possibly meaningful differences between the substantial evidence standard here and the standard of proof struck in
 
 Matter of Lee TT.
 
 are insufficient to distinguish that holding from the instant case. Where, as here, mandatory inclusion on the Registry labels a nurse aide as a patient abuser, and indisputably adversely impacts on future employment opportunities, any procedural safeguard of proof
 
 by less
 
 than a preponderance of the evidence is constitutionally inadequate to protect against an erroneous deprivation of a tangible liberty interest.
 

 Consequently, petitioner is entitled to a new determination by the Commissioner of whether, on the existing record, the allegation of patient abuse was substantiated by a fair preponderance of the evidence
 
 (see, Matter of Lee TT. v Dowling, supra).
 
 We have considered petitioner’s remaining contentions and find them to be without merit.
 

 Accordingly, the judgment of the Appellate Division should be modified, without costs, and the matter remitted to that Court with directions to remand to the State Commissioner of Health for further proceedings not inconsistent with this opinion.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Judgment modified, without costs, and matter remitted to the Appellate Division, Second Department, with directions to remand to respondent Commissioner of Health for further proceedings in accordance with the opinion herein.
 

 *
 

 We recognize that our decision may grant affirmative relief to petitioner, who has not cross-appealed from the Appellate Division’s order upholding the Commissioner’s factual determination of abuse, in that, applying the proper standard upon remittal, the Commissioner may ultimately exonerate her of the
 
 charge. Here,
 
 however, a disposition of this nature is necessary to afford respondents the full relief they seek and, simultaneously, afford petitioner appropriate due process protections on the remittitur
 
 (see, Hecht v City of New York,
 
 60 NY2d 57, 62; see
 
 also, Cover v Cohen,
 
 61 NY2d 261, 277-278).