OPINION OF THE COURT
Joseph Harris, J.
Petitioner moves by way of CPLR article 78 for a judgment annulling and rescinding Advisory Opinion No. 91-9 issued by the New York State Ethics Commission on July 2, 1991, which, among other things, concluded that petitioner’s service on the Mediation/Fact-Finding (M/FF) and Grievance Arbitration (GA) panels of the Public Employment Relations Board (PERB) within two years from his retirement from PERB is prohibited under Public Officers Law § 73 (8). Respondent Public Employment Relations Board supports the motion; respondent New York State Ethics Commission opposes the motion.
THE FACTS
Petitioner was employed at PERB for approximately 21 years. He served as Director of Conciliation from 1978 until his retirement from State service effective January 11, 1990. On December 19, 1989, before his scheduled retirement from PERB, petitioner applied for membership on PERB’s M/FF *708 and GA panels; this application was forwarded by PERB’s Office of Conciliation to PERB’s Board; on December 21, 1989 petitioner’s application to serve on the M/FF and GA panels was approved by PERB’s Board.
Several months after his retirement petitioner was appointed by PERB[1] as a fact finder in an impasse. On June 4, 1990, petitioner issued a fact-finding report which was transmitted to the parties and in accordance with Civil Service Law § 209 (3) (c) was made public within five days thereafter.
By letter dated September 12, 1990 petitioner requested an opinion from the respondent New York State Ethics Commission as to whether his service on the PERB’s M/FF panel and/or the GA panel would conflict with the "revolving door” provision of the Ethics in Government Act contained in Public Officers Law § 73 (8).
On July 2, 1991 the respondent New York State Ethics Commission issued Advisory Opinion No. 91-9 in which it:
A. Concluded that a former employee of PERB, including petitioner, may not serve as a mediator/fact finder or arbitrator on panels administered by PERB within two years of termination from State service "because the required submission to [PERB] of documents for review and approval by [PERB] constitutes 'appearances’ prohibited by Public Officers Law § 73 (8)” in that PERB’s administration of the mediation/ fact-finding and arbitration panels "requires the exercise of substantive judgment and is not ministerial”, and in so concluding, found that petitioner in the instant case in fact violated Public Officers Law § 73 (8). The Commission directed that a hearing be held to determine whether the violation was knowing and intentional and the penalty, if any, to be assessed in relation to the violation.[2]
B. Concluded that petitioner violated Public Officers Law §74 (3) (d) and (h) by submitting his application for appointment to the M/FF and GA panels prior to his termination from State service; however, the Commission conceded it has no jurisdiction over the petitioner in relation to such violation because petitioner was no longer a State employee;
C. Recommended that PERB revise its internal policy concerning designation of members of the M/FF and GA panels, "to eliminate both the favoritism given to former employees *709 as opposed to other panel applicants and to conform [its criteria with the Public Officers Law], which bars such appointment or service of former Board officers or employees for two years after termination from State service or employment.”[3] (See, Public Officers Law § 73 [8].)
THE LAW
In evaluating petitioner’s challenge to Advisory Opinion No. 91-9, the applicable standard is whether the Commission’s determination has a rational basis. An agency determination cannot be considered arbitrary unless it is "without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].)
Petitioner’s first cause of action alleges that the respondent Commission’s conclusion that petitioner violated Public Officers Law § 73 (8) by serving on PERB’s M/FF and GA panels within two years of his termination from State service is arbitrary and capricious and is affected by an error of law. (CPLR 7803 [3].)
The first sentence of Public Officers Law § 73 (8), known as the "revolving door” provision, provides as follows: "No person who has served as a state officer or employee shall within a period of two years after the termination of such service or employment appear or practice before such state agency or receive compensation for any services rendered by such former officer or employee on behalf of any person, firm, corporation or association in relation to any case, proceeding or application or other matter before such agency.”
The next sentence of Public Officers Law § 73 (8) — known as the "lifetime ban” provision — reads: "No person who has served as a state officer or employee shall after the termination of such service or employment appear, practice, communicate or otherwise render services before any state agency or receive compensation for any such services rendered by such former officer or employee on behalf of any person, firm, corporation or other entity in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he personally participated during the period of his service or employment, or which was under his or her consideration.”
*710 The lifetime ban provision, which restricts a broader range of activities than the revolving door provision, is not at issue herein since it is undisputed that petitioner was not rendering services in regard to any case or proceeding in which he was directly involved prior to his retirement from State service. However, petitioner contends that said provision is significant because it tends to show that petitioner’s activities do not constitute an "appearance” before PERB prohibited by the revolving door provision but rather a "communication” or "other services rendered” which language is not found in the two-year revolving door provision of Public Officers Law § 73 (8) and not prohibited therein. In that regard, the respondent Commission asked the respondent PERB the following questions and was given the following responses:
Q9. "Would a neutral appointed from the PERB mediation/ fact finding panel or arbitration panel have any contact with PERB in a professional capacity during or subsequent to such appointment?”
A9. "During their assignment, members of either panel might inquire regarding procedural questions surrounding the assignment. Assigned mediators and fact finders provide the Director of Conciliation or members of his staff with periodic status reports. The director or member of his staff may initiate an inquiry in this regard. An assigned fact finder forwards copies of the fact-finding report and recommendation, if any, to PERB. The mediator or fact finder forwards a narrative describing pertinent aspects of his/her experience, along with a billing invoice. PERB does not, however, instruct the finder as to what the report should recommend regarding any substantive issues, i.e. salary, health insurance, etc.
"As regards grievance arbitration, the assigned panel member forwards a copy of the award rendered, if any, along with an arbitration report form. Pursuant to 207.9 of PERB’s Rules of Procedure, 'after designation, the legal relationship of the arbitrator is with the parties rather than the Board * * * the designated arbitrator shall not be considered an agent of the Board * * * [and] the conduct of the arbitration proceeding shall be under the arbitrator’s exclusive jurisdiction and control * * *’. Pursuant to 207.13 (b) of PERB’s Rules, the arbitrators must make periodic status reports to the Director of Conciliation in the event an award has not been rendered within 60 days after his/her designation.”
Q16. "Is PERB responsible for reviewing any work product *711 or administrative work product by the neutrals on the arbitration or mediation panels?”
A16. "PERB receives and reads all fact-finding reports for purposes of insuring clarity in the expression of recommendations and rationale. PERB receives and reviews billings submitted by mediators and fact finders to insure that they conform to the time limitations imposed by PERB for each assignment.”
Inquiries regarding procedure, provision of status reports, submission of fact-finding reports and arbitration awards (after they are sent to the parties and thus not for substantive review or modification by PERB), and submission of billing invoices communicate information between the panel members and PERB for in-house review and payment. In addition, other inquiries by the Ethics Commission, and responses by PERB, establish a major and substantive role by PERB (indeed, by the very Office of Conciliation of which petitioner was Director for 12 years) in the appointment of members of the M/FF and GA panels and their assignment to specific impasses, and demonstrate further a gardian knot of intertangling relationships.
Petitioner contends that Public Officers Law § 73 (8) requires one to act in an advocacy capacity before said section becomes applicable, and that, inasmuch as petitioner’s role is that of a "neutral” and not an "advocate”, the statute is not applicable to the position of mediator, fact finder, or arbitrator. Respondent Ethics Commission reads the statute more expansively, pointing to the fact that the statute recites that the former officer or employee shall not "appear or practice” before his former agency. Respondent Ethics Commission avers that, inasmuch as the term "practice” can be reasonably interpreted to refer primarily to actions taken in a course of advocacy on behalf of another party, the term "appear” was obviously meant by the Legislature to denote and include activities which would not be considered advocacy, arguing that to hold otherwise would make the term "appear” totally superfluous, contrary to recognized canons of statutory construction. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 231.)
Respondent Ethics Commission further contends that "appearance” does not require "physical appearance” but may reasonably be interpreted to include submissions to PERB, including the type of contact heretofore noted between PERB *712 and its mediators, fact finders, and arbitrators. Finally, respondent Commission argues that prohibiting petitioner from serving on PERB panels even though he is not acting as an advocate for a particular party is highly consistent with the purpose of the "revolving door” statute as it prevents even the appearance of impropriety — that petitioner is receiving special or favored treatment by reason of his former employment with PERB and the contacts and associations he established while working there. If petitioner were allowed to serve on the PERB panels, there is the clear and reasonable danger of creating an unjustifiable appearance to other panel members, persons aspiring to be panel members, parties to disputes to which petitioner might be assigned by PERB, and to the public at large,[4] that PERB oversees and reviews petitioner’s performance as a panel member by a different and more lenient standard than it employs with other panel members, and that when petitioner speaks, it is not with the voice of an independent panel member, but with the voice of PERB.
The Commission has consistently interpreted the word "appearance” as set forth in Public Officers Law § 73 (8) to extend beyond an actual physical appearance or actual advocacy. (See, 1989 Opns St Ethics Commn Nos. 89-2, 89-7, 89-9; 1990 Opns St Ethics Commn Nos. 90-7, 90-18; 1991 Opns St Ethics Commn No. 90-17.) Although there are distinguishing features in each of these Advisory Opinions, the consistency in the Commission’s interpretation is a sign that it acted in good faith, and not arbitrarily and capriciously in promulgating Advisory Opinion No. 91-9. The construction given a statute by the agency responsible for its administration must be upheld if it is not irrational or unreasonable. (Matter of Howard v Wyman, 28 NY2d 434, 438.) Nor may a court substitute its judgment for that of an administrative agency. (Matter of Barklee Realty Co. v New York State Div. of Hous. & Community Renewal, 159 AD2d 416.)
Less emphasis seems to be placed by the parties on a conjunctive part of the first sentence of Public Officers Law §73 (8): "or receive compensation for any services rendered by such former officer or employee on behalf of any person, firm, corporation or association in relation to any case, proceeding or application or other matter before such agency.” Yet the reach of this portion of Public Officers Law § 73 (8) seems even *713 more extensive than the "appear or practice” portion that precedes it.
"On behalf of’ does not facially mandate advocacy but is readily susceptible to be interpreted to refer to a mere nexus between petitioner as a panel member and the parties to the dispute — whether "neutral” or "adversarial.”
A remedial statute need not be designed to wield the impact of a bludgeon in order to accomplish its salutary objectives. It may act in subtle ways. That is a legislative prerogative. (See, Defiance Milk Prods. Co. v DuMont, 309 NY 531; People v Friedman, 302 NY 75; Oriental Blvd. Co. v Heller, 27 NY2d 212; Fagan v Axelrod, 146 Misc 2d 286 [Sup Ct, Albany County 1990].)
The Ethics in Government Act, of which Public Officers Law § 73 (8) is a part, was enacted in 1987 to help restore public trust and confidence in government. Provisions such as section 73 (8) attempt to further that objective by preventing favoritism, undue influence, conflicts of interest and even the appearance of same. In this spirit, the Governor’s Program Bill Memorandum to the Ethics in Government Act (Bill Jacket, L 1987, ch 813) recites (at 5): "Public trust and confidence in elected and appointed public officials are fundamental and necessary conditions for a strong and stable democratic government. Favoritism and the potential for conflicts of interest, as well as the mere appearance of such, serve to weaken and erode the public’s trust and confidence in government. To enhance public trust and confidence in our governmental institutions, this bill contains strengthened prohibitions against behavior which may permit or appear to permit undue influence or conflicts of interests”.
The purpose of "revolving door” provisions is "to prevent former government employees from unfairly profiting from or otherwise trading upon their contacts, associations and special knowledge that they acquired during their tenure as public servants” (Forti v Kuttner, 75 NY2d 596, 605 [1990]).
In two subtle ways, among others, the actions of the petitioner undermine public trust and confidence in government: (1) his former association with PERB, and especially in the high level position occupied by him, afforded him obvious preferential treatment in appointment to the mediation and arbitration panels and susceptible to the danger that he would receive preferential treatment in assignments; and (2) in the event petitioner’s recommendation in mediation and fact find *714 ing were to be rejected by the parties or any of them, and the case was returned to PERB for further proceedings, petitioner’s recent and close relations with PERB might readily have a tendency unwarrantedly to elevate his recommendations into PERB recommendations rather than allowing for new and independent thought and solutions.
That petitioner may be a veritable Einstein in the field of labor relations, and that his inability to serve on the PERB panels may be a great loss to his profession, and that one can certainly empathize with the concern and desire of PERB to have its mediation, fact-finding and arbitration panels composed of nothing less than the highest qualified persons in their field of endeavor, are matters to be fought in the legislative forum. Certainly public trust and confidence in government is equally as important, and one cannot legally gainsay the Legislature’s determination of priority.
Petitioner’s second cause of action alleges that the respondent Commission’s conclusion that petitioner violated Public Officers Law § 74 (3) (d) and (h) by submitting his application for appointment to the M/FF and GA panels prior to his termination from State service is beyond and outside the Commission’s jurisdiction upon the ground that petitioner did not request the Commission to render an advisory opinion with respect to the requirements of Public Officers Law § 74, and because Executive Law § 94 (12) does not authorize the Commission to investigate possible violations of Public Officers Law § 74 by petitioner inasmuch as petitioner was not a State employee at the time the Commission’s inquiry was initiated. Petitioner further contends (second and fourth causes of action) that the Commission’s conclusion with respect to Public Officers Law § 74 (3) (d) and (h) is in violation of lawful procedure because petitioner was not afforded the procedural due process protection required in Executive Law § 94 (12) when an investigation is undertaken by the Commission on its own initiative.
Public Officers Law § 74 (3) (d) provides in pertinent part that: "No officer or employee of a state agency * * * should use or attempt to use his official position to secure unwarranted privileges * * * for himself.”
Public Officers Law § 74 (3) (h) provides that: "An officer or employee of a state agency * * * should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust.”
*715 The Commission’s authority to render advisory opinions is set forth in Executive Law § 94 (15), which provides, in pertinent part, as follows: "Upon written request from any person who is subject to the requirements of sections seventy-three, seventy-three-a and seventy-four of the public officers law, the commission shall render advisory opinions on the requirements of said provisions.”
Although petitioner claims he did not request an opinion regarding Public Officers Law § 74 (3) (d), it is obvious from exhibits A, B and C to the petition that in fact he did.[5]
Although the Ethics Commission is authorized, pursuant to Executive Law § 94 (12), to conduct an investigation on its own initiative into possible violations of Public Officers Law § 74 — which would entitle the individual affected to be notified in writing of the alleged violations and to be given 15 days within which to submit a written response — this fact is irrelevant to the circumstances of this case. In this case the inquiry was directly initiated by the petitioner. The facts in the Commission’s hands were not facts ferreted out in an investigation initiated and conducted by the Commission, but supplied directly, purposefully, and unsolicited by the petitioner. It was as though petitioner submitted to the Commission an "Agreed Statement of Facts” and wanted a legal opinion *716 thereon. He may not have liked that opinion when it came, but in no way was he denied due process.
Accordingly, and for all the above-stated reasons, the court finds that the determination of the respondent New York State Ethics Commission as contained in Advisory Opinion No. 91-9, promulgated July 2, 1991, was not arbitrary and capricious, was not made in violation of lawful procedure, and was not affected by an error of law. Accordingly, the motion of petitioner, joined in by respondent Public Employment Relations Board, for a judgment pursuant to CPLR article 78, annulling and rescinding Advisory Opinion No. 91-9 issued by respondent New York State Ethics Commission on July 2, 1991, which, among other things, concluded that petitioner’s service on the Mediation/Fact-Finding (M/FF) and Grievance Arbitration (GA) panels of the Public Employment Relations Board (PERB) within two years from his retirement as an employee of PERB is prohibited under Public Officers Law § 73 (8) is in all respects denied, and judgment shall be entered dismissing the petition.

. Through the new Director of Conciliation.

. 1991 Opns St Ethics Commn No. 91-9.

. 1991 Opns St Ethics Commn No. 91-9.

. An appearance of impropriety ought to be judged from the perspective of an ordinary reasonable person rather than that of a Rhodes scholar.

. Exhibit A, which is a letter from petitioner to Joseph Bress, Executive Director, New York State Ethics Commission, dated September 12, 1990, and which initiated the inquiry that resulted in Advisory Opinion No. 91-9, reads in pertinent part as follows:
"Dear Joe:
"Shortly before I left PERB and in anticipation of my retirement, I applied to the Board for membership on its mediation and fact-finding panel [petitioner was then PERB’s Director of Conciliation, the nominating authority for such appointments] * * * My application was approved [by PERB’s Board] before I left permanent service with the Board. * * *
"However, because I do not want any question to exist as to the propriety of my service, I would appreciate your opinion on this matter.
"In a similar vein, I would solicit your opinion on a related matter. Prior to leaving permanent service with PERB, I also applied, and was accepted for admission to, the Board’s grievance arbitration panel * * *
"Therefore, your opinion is important to me.”
Exhibit B, dated September 14, 1990, from Barbara F. Smith, counsel to the New York State Ethics Commission to petitioner, in response to petitioner’s letter of September 12, recites:
"Dear Mr. Kelly:
"On behalf of the State Ethics Commission, I acknowledge receipt of your request for an advisory opinion as to the application of section 73, 73-a, or 74 of the Pubic Officers Law, to the set of facts stated in your request.”
*716 The next communication is a letter from petitioner to Ms. Smith, dated September 27, 1990, thanking her for her prompt reply to his letter of September 12 to Joseph Bress, and containing another argument in favor of petitioner’s position. Nowhere in said letter does petitioner request the Ethics Commission not to render an advisory opinion on the subject matter of Public Officers Law § 74, nor objecting to same, although it was obvious that that was what was occurring.