OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously affirmed.
Defendant, in February of 1995, in the Supreme Court, Suffolk County (M.F. Mullen, J.), entered pleas of guilty to sodomy in the second degree and sexual abuse in the first degree. The initial charges arose when defendant, during the summer of 1992, lured two young boys into his home for the purpose of engaging in sexual relations. The defendant took photographs of the victims. The victims’ statements contained allegations that defendant used force and/or threat of force. Defendant was sentenced on May 5, 1995 to concurrent definite sentences of 90 days’ incarceration and 5 years’ probation.
On January 21, 1996, while defendant remained on probation, the Sex Offender Registration Act (hereafter referred to as SORA), commonly known as “Megan’s Law,” became effective (Correction Law art 6-C). The act requires convicted sex offenders, including those on probation at the time of its enactment, to register with the Department of Criminal Justice Services (Correction Law §§ 168-f, 168-g [2]). Sodomy in the second *40 degree (Penal Law § 130.45) is designated a “sex offense” (Correction Law § 168-a [2] [a]) while sexual abuse in the first degree (Penal Law § 130.65) is designated a “sexually violent offense” (Correction Law § 168-a [3] [a]). A “sexually violent predator” is defined as any person convicted of a “sexually violent offense” or a sex offender who suffers from a mental abnormality that makes such person likely to engage in predatory sexual conduct (Correction Law § 168-a [7]). Section 168-g (1) of the Correction Law requires that the Division of Parole or Division of Probation and Correctional Alternatives, in accordance with the risk factors set forth in Correction Law § 168-l, determine the duration of registration and notification for every sex offender who was on parole or probation for a “sex offense” and/or a “sexually violent offense” (see, Correction Law § 168-a [2], [3]). If the risk of repeat offense is high and a threat to the public safety exists, such sex offender shall be deemed a “sexually violent predator” and a level three designation shall be given to such sex offender (Correction Law § 168-Z [6] [c]).
The law establishes three levels of community notification. A level one designation is the lowest level and provides for information to be given only to the enforcement agencies having jurisdiction over the individual: A level two, or moderate, designation provides notification similar to level one along with authorization to said agencies to disseminate relevant information including approximate address based on zip code, a photograph, background of the crime, type of victim and any special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender. Level three, the high risk category, provides for the dissemination of the same information as for level two offenders, as well as the dissemination of the offender’s exact address. In addition, the information is required to be recorded in a subdirectory which, upon request, will be made available to the public. (Correction Law § 168-Z [6] [c]; see also, People v Ross, 169 Misc 2d 308, 310.) With regard to the duration of registration, every sex offender must register annually for a period of 10 years. For an offender deemed a “sexually violent predator,” the 10-year period is a minimum and the offender must verify registration quarterly (Correction Law § 168-h).
As previously indicated, the Division of Parole or Division of Probation and Correctional Alternatives is designated to determine the duration of registration and notification of every sex offender on parole or probation on the effective date of the *41 act. Said determination is to be made in accordance with the risk factors delineated in section 168-Z (see, Correction Law § 168-g [1]). Section 168-Z requires the Board of Examiners of Sex Offenders to develop guidelines and procedures to be used in assessing said risk factors. The Board prepares a checklist form from which the risk of repetitive behavior is determined by considering four groups of characteristics, viz., current offense, criminal history, postoffense behavior and release environment. Points are assessed for characteristics within each group. The point spreads for the various risk levels are: 0-70, low risk; 75-105, moderate risk; and 110-300, high risk (see, People v Sumpter, 177 Misc 2d 492, 495, citing Risk Assessment Guidelines and Commentary, at 3 [1997 ed]).
In the case at bar a risk level assessment was conducted on defendant using the risk assessment checklist in compliance with section 168-g of the Correction Law. Defendant, who was assessed to be a level three offender, was requested to sign the sex offender registration form. Defendant, on the advice of counsel, refused to sign the form claiming that said form was inaccurate. Defendant claimed that the inclusion of force based upon the victims’ statements and the Board of Examiners’ risk assessment instrument was improper since the indictment and conviction did not indicate use of force. A review of defendant’s risk level assessment by the New York State Division of Probation and Correctional Alternatives resulted in no change. Thereafter, defendant was charged in the Supreme Court with a violation of probation due to his failure to register. Defendant was also charged in the Justice Court of Southampton with failing to register, an A misdemeanor (see, Correction Law § 168-g [2]; § 168-t). Defendant, in both forums, challenged the constitutionality of the act on various grounds. The Supreme Court, Suffolk County (M.F. Mullen, J.), in an order dated January 8, 1997, rejected defendant’s arguments. He was thereafter resentenced and appealed therefrom to the Appellate Division, Second Department. The appeal from said resentence has been withdrawn. The Justice Court (D. Kooperstein, J.), in a decision dated May 21, 1997, also rejected defendant’s arguments. Following a jury trial, defendant was convicted of the charge.
Defendant maintains that his constitutional rights to procedural due process and equal protection of the laws have been violated by SORA and that its retroactive application constitutes an ex post facto law expressly prohibited by both the United States and New York State Constitutions.
*42 Initially, we note that the retroactive application of SORA to conduct occurring prior to its effective date does not violate the constitutional prohibition against ex post facto legislation (see, Doe v Pataki, 120 F3d 1263 [2d Cir 1997], cert denied 522 US 1122 [1998]; see also, People v Grice, 254 AD2d 710; Matter of S.V. v Calabrese, 246 AD2d 655).
The Fourteenth Amendment of the United States Constitution provides that no State shall deny to any person within its jurisdiction the equal protection of the laws. This right is also codified in the New York State Constitution (see, US Const, 14th Amend, § 1; NY Const, art I, § 11). Defendant herein contends that those sex offenders who were incarcerated on or after the effective date of the statute are treated differently from those offenders who, like defendant, were on parole or probation on said date and that such disparate treatment violates his right to equal protection of the laws.
The Legislature, when it enacted SORA, provided separate procedures for classifying those offenders who were incarcerated and those who were released from prison but remained on parole or probation. Thus, for risk assessment purposes, the Legislature created two separate classes of offenders.
As to convicted sex offenders in State custody, the Department of Correctional Services is required to notify the Board of Examiners of Sex Offenders when an offender is about to be released. The Board is then required to assess the offender’s risk, and within 60 days prior to said offender’s release, provide the sentencing court with a recommendation as to the offender’s status and risk level (Correction Law § 168-Z [6]). The sentencing court in accordance with the procedure set forth in section 168-n shall then render a determination as to said offender’s status and risk level. Further, section 168-n (3) requires the court to review any victim’s statement and any materials submitted by the offender. The court “shall also allow the sex offender to appear and be heard, and inform the sex offender of his right to have counsel appointed, if necessary” (Correction Law § 168-n [3]).
As previously indicated, the procedure for risk level classification is somewhat different for those offenders, such as defendant, who were on parole or probation on the effective date. The procedure to be followed is set forth in section 168-g (1), which requires the Division of Parole or Division of Probation and Correctional Alternatives to determine the offenders’ “duration of registration and notification” in accordance with the guidelines set forth in section 168-Z. The offend *43 ers in this class, unlike those who were incarcerated, were not entitled to any hearing, have counsel present or provided with an opportunity to rebut or challenge the risk assessment. Their sole remedy for relief from any further duty to register was to petition the sentencing court for relief pursuant to section 168-o (see, Correction Law § 168-g [4]). In addition, the Division of Parole and the Division of Probation and Correctional Alternatives also established a separate administrative review procedure (see, Doe v Pataki, 3 F Supp 2d 456, 463).
The general rule, applicable to a challenge to legislation based on equal protection, is that the legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate State interest (see, City of Cleburne v Cleburne Living Ctr., 473 US 432, 440). The Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State Legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory inequality will not be set aside if any state of facts would reasonably support its justification (see, McGowan v Maryland, 366 US 420, 425-426).
The Legislature in enacting SORA stated as follows:
“The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies’ efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders.
“The system of registering sex offenders is a proper exercise of the state’s police power regulating present and ongoing conduct. Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
*44 “Persons found to have committed a sex offense have a reduced expectation of privacy because of the public’s interest in safety and in the effective operation of government. In balancing offenders [’] due process and other rights, and the interests of public security, the legislature finds that releasing information about sex offenders to law enforcement agencies and, under certain circumstances, providing access to limited information about certain sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.
“Therefore, this state’s policy, which will bring the state into compliance with the federal crime control act 42 U.S.C. 170101, is to assist local law enforcement agencies’ efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about certain sex offenders to the public as provided in this act.” (Legislative Findings, L 1995, ch 192, § 1, eff Jan. 21, 1996.)
As the foregoing makes clear, the Legislature was deeply concerned with protecting the public from the risk of recidivism posed by sex offenders and with assisting the criminal justice system in identifying, investigating, apprehending and prosecuting sex offenders. In addressing these concerns, the Legislature had to formulate procedures encompassing offenders who were incarcerated as well as those on parole or probation. Since the incarcerated offenders posed no threat to the community and since they were under the direct control of the Department of Correctional Services, the Legislature was able to achieve its goal as to said offenders, while affording them an opportunity to have a hearing prior to a determination as to their status and level. On the other hand, the risk posed to the community by those offenders on parole or probation was more immediate. As a result, the Legislature established a procedure wherein such offenders’ status and level were determined by the Division of Parole or Division of Probation and Correctional Alternatives. The offenders were given an opportunity to object to further registration by means of a petition to the sentencing court (see, Correction Law § 168-g [4]; § 168-o). Moreover, inasmuch as said offenders were already under the supervision of the agency rendering the assessment, the agency was already familiar with their backgrounds and personal histories (see, Doe v Division of Probation & Correction Alternatives, 171 Misc 2d 210). Since there existed a rational basis for *45 the disparate classification procedures, defendant’s equal protection claim is not sustainable.
In reaching this result, this court is not unmindful of those areas where the general rule as to equal protection gives way and the courts impose what have been referred to as “strict scrutiny” and “careful scrutiny” tests. Inasmuch as those tests are applicable only to statutes which set forth classifications based on race, alienage or national origin or impinge on personal rights protected by the Constitution (strict scrutiny) as well as classifications based on gender (careful scrutiny), they are not applicable to the instant matter (see, City of Cleburne v Cleburne Living Ctr., supra, at 439-442).
The Due Process Clause embodied in both the 14th Amendment and the New York State Constitution provides that no person shall be deprived of life, liberty or property without due process of law (US Const, 14th Amend, § 1; NY Const, art I, § 6). The resolution of procedural due process claims involves a two-step process: A determination (1) whether there exists a liberty or property interest which has been interfered with by the State; and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient (see, Kentucky Dept. of Corrections v Thompson, 490 US 454, 460).
Defendant herein asserts that his right of procedural due process was violated since he was not afforded an opportunity to be heard prior to the Suffolk County Department of Probation’s determination relative to his classification and risk assessment level. An identical challenge was raised in a class action before the United States District Court for the Southern District of New York (Doe v Pataki, 3 F Supp 2d 456, supra). Judge Chin, after concluding that offenders in what he termed the “probation-parolee class” had a protected liberty interest which was interfered with, further concluded that the procedures utilized were inadequate. Although the interpretation of Federal constitutional questions by the lower Federal courts may serve as useful and persuasive authority, they are not binding as New York State courts have an independent responsibility to exercise their correlative adjudicative power on questions of Federal law (see, People v Kin Kan, 78 NY2d 54, 60).
Generally, the courts have held that while one’s good name and standing, as well as the interest in protecting that reputation, may constitute a protected liberty interest (see, Wisconsin v Constantineau, 400 US 433, 437), there must, in addition, be some other tangible element in order to raise the damage to *46 one’s reputation to the level of a protected liberty interest (see, Paul v Davis, 424 US 693). This “stigma plus” test is required to establish a constitutional deprivation (see, Neu v Corcoran, 869 F2d 662, 667 [2d Cir], cert denied 493 US 816; Matter of Miller v DeBuono, 90 NY2d 783).
In Valmonte v Bane (18 F3d 992), the United States Court of Appeals for the Second Circuit applied the “stigma plus” test in upholding a challenge to the inclusion of claimant’s name on the New York State Central Register of Child Abuse and Maltreatment. The court therein found that the dissemination of claimant’s information to the list of potential employers in the child care field satisfied the “stigma” portion of the test. The court went on to find that requiring all child care providers to consult the central register and further requiring said providers to provide a written explanation in the event they wish to hire someone on the list, constituted a tangible burden on claimant’s employment prospect which satisfied the “plus” requirement of the test (see, Valmonte v Bane, supra, at 999-1002). In the case at bar, the categorizing of defendant as a “sexually violent predator,” when taken together with the attendant requirements as to registration and the dissemination of the names and personal information of the defendant, is sufficiently similar to the statutory provisions in Valmonte v Bane (supra) to satisfy the “stigma plus” test (see, Doe v Pataki, 3 F Supp 2d 456, 466-468, supra).
Having concluded that SORA impinges upon a protected liberty interest, it remains to be considered whether the procedural safeguards established by the State are sufficient to protect defendant’s right to due process. The fundamental requirement of due process is opportunity to be heard “at a meaningful time and in a meaningful manner” (see, Armstrong v Manzo, 380 US 545, 552). Due process is not a technical concept with fixed content unrelated to time, place and circumstance. Rather, it is flexible and calls for such procedural protections as the particular situation demands (see, Mathews v Eldridge, 424 US 319, 334).
In Mathews (supra), the Supreme Court of the United States set forth three distinct factors to be considered when identifying the specific dictates of due process, to wit: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government’s interest, including the function involved and the fiscal and *47 administrative burdens that the additional or substitute procedural requirements would entail (Mathews v Eldridge, supra, at 334-335).
It cannot be seriously argued that the defendant’s private interest in his liberty and reputation is not substantial. As indicated prior hereto, the defendant is subject to registration on an annual basis and verification of his address on a quarterly basis for a minimum of 10 years (Correction Law § 168-h). In addition, defendant’s name and personal data will be maintained in a “sexually violent predator subdirectory” which shall be distributed to local police departments on an annual basis (Correction Law § 168-q). Thus, as Judge Chin concluded, the defendant has a compelling interest in being accurately assigned a risk level classification (see, Doe v Pataki, 3 F Supp 2d 456, 469, supra).
The Suffolk County Department of Probation, pursuant to section 168-g, performed an initial risk classification and level assessment on defendant in accordance with procedures outlined in section 168-Z. The defendant was classified a “sexually violent predator” and assigned to the level three risk category. Defendant’s risk level assessment was conducted by a supervisor for the Suffolk County Department of Probation and other members of the Board of Examiners of Sex Offenders (Correction Law § 168-Z). A review of defendant’s risk level assessment was conducted by the New York State Division of Probation and Correctional Alternatives. The Division of Probation and Correctional Alternatives sustained the decision of the Suffolk County Department of Probation. Defendant also had the right to petition the sentencing court for relief from any further duty to register (Correction Law § 168-g [4]; § 168-o; see also, Matter of Youngs v Division of Probation & Correctional Alternatives, 175 Misc 2d 51). Moreover, defendant could have instituted an article 78 proceeding to review the determination of the Division of Probation and Correctional Alternatives (see, Doe v Division of Probation & Correction Alternatives, supra). We note that People v Rodriguez (240 AD2d 351) and Matter of Raphael S. v Leventhal (246 AD2d 659) are not to the contrary. Rodriguez held that no appeal lies from a judicial determination of a sex offender’s risk assessment (see, People v Stevens, 91 NY2d 270; cf., People v Hernandez, 93 NY2d 261). Matter of Raphael S. held that one may not resort to a writ of prohibition to prevent the enforcement of such a determination. Neither case involved a risk assessment by the Division of Probation and Correctional Alternatives, *48 which is clearly not a judicial determination. It is this court’s opinion that the aforementioned avenues of review effectively minimized the risk of an erroneous deprivation of defendant’s private interest (see, Doe v Division of Probation & Correction Alternatives, supra, at 215; contra, Doe v Pataki, 3 F Supp 2d 456, 469-470, supra).
The Government’s interest in ensuring that the defendant be designated at the appropriate risk level is to protect the public from the danger of recidivism posed by sex offenders and to assist the criminal justice system to identify, investigate, apprehend and prosecute sex offenders (see, Legislative Findings, L 1995, ch 192, § 1, eff Jan. 21, 1996). The United States Court of Appeals for the Second Circuit in discussing the impact sexual crimes have on society stated as follows: “The seriousness of the harm that sex offenders’ actions cause to society and the perception, supported by some data, that such offenders have a greater probability of recidivism than other offenders have recently combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct. Studies have shown that sex crimes are widespread, see, e.g., Brief of Amicus Curiae United States at 4 (citing Bureau of Justice Statistics, U.S. Dept. of Justice, Fact Sheet, National Crime Victim Survey Redesign (Oct. 30, 1994) (table) (312,000 rapes and attempted rapes and 173,000 other sexual assaults in 1993)), and that their impact on both the victim and society as a whole is devastating, see, e.g., id. at 5-6 (citing John Briere & Marsha Runtz, Childhood Sexual Abuse: Long-Term Sequelae and Implications for Psychological Assessment, 8 J. Interpersonal Violence 312, 324 (Sept. 1993) (noting that molested children are likely to develop severe psychosocial problems) and Alphie Kohn, Shattered Innocence, Psychology Today, Feb. 1987, at 54, 58 (noting that sexually abused boys are more likely than non-abused boys to become sex offenders themselves, and that sexually abused girls are more likely than non-abused girls to have children who are abused))” (Doe v Pataki, 120 F3d 1263, 1266, supra). While the Second Circuit went on to note that there is a difference of opinion among authorities as to whether or not sex offenders pose a greater risk of recidivism, the devastating impact of said crimes upon the victims and society as a whole cannot be challenged.
In view of the foregoing, this court concludes that the registration and classification of such offenders are reasonable *49 and necessary and, under the circumstances, sufficient procedural protection was provided to meet the minimum requirements of due process.
Finally, we note that in the majority of cases, the certification, designation and notification provisions of SORA cannot be challenged on direct appeal from the judgment of conviction of the underlying sexual offense (see, People v Hernandez, supra; People v Stevens, supra). However, the constitutionality of the process can be raised on a direct appeal from a judgment of conviction of the independent crime of failing to register.
DiPaola, P. J., Ingrassia and Palella, JJ., concur.