(August 18, 2016)

In the Matter of HOME RUN KTV INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [36 NYS3d 641]—

Determination of respondent New York State Liquor Authority, dated August 18, 2015, sustaining three charges that

petitioner permitted its premises to become disorderly in violation of Alcoholic Beverage Control Law § 106 (6) and failed to exercise adequate supervision over the premises in violation of rule 54.2 of the Rules of the State Liquor Authority (9 NYCRR 48.2), and imposing an $8,500 civil penalty and a $1,000 bond forfeiture on petitioner, modified, on the law, the petition granted to the extent of vacating so much of the determination that sustained charges 12 and 14, dismissing those charges, vacating the penalty, and remanding the matter to respondent for imposition of an appropriate penalty, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Shlomo Hagler, J.], entered on or about Dec. 21, 2015), otherwise disposed of by confirming the remainder of the determination, without costs.

Respondent's determination that petitioner suffered or permitted altercations and/or assaults to occur, leading to a person being shot and assaulted on the licensed premises, is supported by substantial evidence (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). An armed gunman and four others entered the premises, and proceeded to one of the karaoke rooms. The gunman pointed a firearm at the individuals in the room. A fight ensued and one of the male patrons was shot in the leg. Another male patron was punched in the head and face. This occurred, despite petitioner's general practice of patting down patrons upon entry. The petitioner's head of security's concessions that he did not know who (if anyone) was manning the front door at the time the perpetrators entered and that the security guard, if present, may have been patrolling the premises at the time of such entry, allow for an inference to be drawn that lax security measures allowed the incident to occur.*

We conclude however that there was an insufficient showing by respondent to support the charges relating to the recovery of alleged drugs at the premises. As a threshold matter, there was no competent evidence that the substance recovered was ketamine. The redacted laboratory report, introduced without proper foundation does not identify the case to which it is attached. Neither the name of the vouchering police officer or his/her precinct is stated on the report. The report states that two items, identified as "ziploc bag(s) cont. solid material," were analyzed. One of the containers was found to contain ketamine. The analysis of the second sample had not been determined.

---

\* In response to the incident, metal detectors were installed at the premises.

Assuming there was a sufficient showing that the substance recovered was ketamine, the record is devoid of any evidence that petitioner licensee or petitioner's manager knew or should have known of the presence of these drugs (*see Matter of Richjen Rest. v State Liq. Auth.*, 51 NY2d 847, 849-850 [1980]; *Matter of Albany Manor Inc. v New York State Liq. Auth.*, 57 AD3d 142, 145-146 [1st Dept 2008]).

Contrary to the dissent's characterizations, there was no evidence that there had been numerous drug purchases on the premises. Respondent submitted a memorandum from the precinct commanding officer, who was not called to testify, memorializing the execution of the April 23, 2015 search warrant. The memorandum states that the search warrant for the premises was issued by a criminal court judge based upon the "documented purchase of illegal controlled substances in connection with official Departmental enforcement operations." There is no mention of the number of purchases, where they were made, when they were made, or by whom they were made. From this, the dissent apparently gleans that prior drug purchases were made.

Petitioner's head of security testified that as a former detective assigned to that area, he was aware of the use of ketamine in the neighborhood and once employed by petitioner, directed his staff to ensure that the patrons were not engaged in the use or sale of any controlled substances. He testified that he was unaware of any documented or undocumented drug sales on the premises.

None of the police officers who testified, including those who executed the search warrant, testified as to any knowledge of any prior purchases of ketamine or other any other controlled substance on the premises or of any drug activity at the premises. One of the executing officers testified about a high use of the drug ketamine in the precinct but testified that he had no knowledge of ketamine use or other drug use at petitioner's bar and was unaware of any complaints of the same made to the police.

The dissent's assertion that since a search warrant was issued based upon probable cause, what provided that probable cause most likely was the purchase and use of drugs at the premises, is not supported by the record. The search warrant and search warrant affidavit were not submitted by respondent. There was no testimony as to its contents. Petitioner licensee testified that he was never shown the search warrant and the executing officers testified that they never saw the search warrant, but rather were told of its existence by the

precinct commanding officer. The officers testified that they were not familiar with the contents of the search warrant or what led to its being attained.

Respondent also failed to establish that inadequate security measures resulted in the presence of the drugs on the premises. The alleged drugs found were contained in two vials, less than one half an inch in length, and a small baggie. The recovery of two small vials and a baggie of a powdery substance is not substantial evidence of trafficking, and is insufficient to establish that petitioner failed to exercise reasonable diligence in supervising the premises (*see Matter of 150 RFT Varick Corp. v New York State Liq. Auth.*, 107 AD3d 524 [1st Dept 2013]).

The dissent points to the testimony of petitioner's head of security that when security guards were on patrol they would sometimes have a staff member, who was not trained to pat people down, watch the door, as allowing an inference to be drawn that lax security measures led to the presence of drugs at the scene. This however, is purely speculative and not based on the record. The quantity of drugs recovered was very small. The uncontroverted police testimony was that the drugs could easily been have secreted on an individual. There was no evidence that the patrons entering the premises were not subjected to a patdown or that given the packaging, a patdown would have detected drugs. Substantial evidence, which has been characterized as a "minimal standard" or as comprising a "low threshold," must consist of such relevant proof, within the whole record, "as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*Matter of Café La China Corp. v New York State Liq. Auth.*, 43 AD3d 280, 280-281 [1st Dept 2007]), it does not, however, "rise from bare surmise, conjecture, speculation or rumor" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d at 180).

In light of the foregoing, we remand for the imposition of an appropriate penalty.

Concur—Sweeny, Manzanet-Daniels and Webber, JJ.

Tom, J.P., and Andrias, J., dissent in part in a memorandum by Tom, J.P., as follows: I agree with the majority that respondent's determination that petitioner suffered or permitted altercations and/or assaults to occur, leading to a person being shot and punched on the licensed premises, is supported by substantial evidence (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]).

However, because there is substantial evidence to support respondent's findings that petitioner suffered or permitted the premises to become disorderly by engaging in and/or suffering

the storage, possession, use and trafficking of a controlled substance in violation of Alcoholic Beverage Control Law § 106 (6), and failed to exercise adequate supervision over the conduct of the licensed premises in violation of Rules of the State Liquor Authority rule 54.2 (9 NYCRR 48.2), I respectfully dissent from the majority's contrary holding and would confirm the agency's determination in its entirety.

The record contains evidence that lax security measures at petitioner's karaoke bar allowed violence and drug dealing to occur on the premises. As the majority recognizes with regard to the charge that petitioner permitted the shooting to occur, the evidence showed that there was only one security guard at petitioner's bar on the night of the shooting, who likely was not guarding the entrance so as to allow the perpetrators to enter the premises with a gun. Specifically, on the night of October 29, 2014, four men entered the establishment, and made their way to a karaoke room. One of the men pointed a firearm at a group of 10 to 15 people, and, in Mandarin Chinese, told them to sit down or they would be shot. The man with the gun was identified as "Pi Fa," also known as "Wholesale," a man who allegedly runs a gambling operation in Manhattan. A fight broke out, and Pi Fa shot a male patron, Xinke Hang, in the leg. Then, the other three men in Pi Fa's party punched Hang and another male patron, Pan Youdi, in the head and face before leaving.

Wade Williams, petitioner's head of security, testified that he was aware that there was an issue with ketamine (a veterinary anesthetic also used as a recreational drug) use in the neighborhood and directed his security guards to patrol the premises, which has 13 private karaoke rooms, to ensure that the patrons were not engaged in the sale or use of controlled substances. However, he also explained that, when security guards are on patrol, they will sometimes have a staff member watch the front door and that the staff are not trained to pat people down, like the security guards. Williams thus conceded that the perpetrators of the shooting may have entered during a time when non-security staff members were watching the entrance. In other words, due to these insufficient security measures, patrons could bring firearms or controlled substances into the bar without being patted down. As the ALJ concluded: "[B]ased . . . [on] the record in general, a fair inference may be raised that there was an apparent laxity in supervision or an inadequacy of supervision that created a greater risk that surreptitious and illegal activity, such as possession and use of a controlled substance (ketamine), might occur on the Licensed

Premises, especially given its private-room structure. Licensee's failure to take more affirmative actions to contain this risk constitutes a form of suffering and permitting, as charged."

Regarding the controlled substance charges, Police Officer Robert Cox testified that there was a high use of ketamine, a white powdery substance, in the precinct. The police records in evidence establish that a search warrant for petitioner's bar was issued by Judge Michelle A. Armstrong, Queens County Criminal Court, "based on the documented purchase of illegal controlled substances in connection with official Department enforcement operations." Notably, this warrant could only have been procured based on allegations that provided the court with "reasonable cause" to believe that controlled substances were being sold at petitioner's bar (*see* CPL 690.35, 690.40). The record does not show that the licensee made any attempts to controvert the validity of the search warrant.

Officer Cox, who executed the search warrant, described the premises as well-lit, with multiple rooms with closed doors. The doors had windows on them that let one see into the room. The police recovered two clear vials, each filled with about 1,000 milligrams of ketamine, in one of the rooms. One of the vials was found underneath a couch and the other was found under the "roof" of the room. Police Officer Dominic Cappiello, who executed the warrant with Officer Cox, determined that the two vials recovered from the room contained ketamine based upon how it looked—it was a white powdery substance—and how it was packaged.

In addition, Police Officer Raymond Nappi, who was also involved in executing the search warrant, testified that he found a clear, "little baggy of white powder in a white envelope," which he believed to be ketamine, on the floor in one of the rooms. A Police Department lab test report entered into evidence indicated that one of the samples recovered from the premises was in fact ketamine; testing of another sample was pending.

It is settled that an administrative determination must be sustained if it is supported by substantial evidence upon the record as a whole (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d at 181), which requires less than a preponderance of the evidence and may include hearsay testimony and circumstantial evidence (*see generally Matter of Café La China Corp. v New York State Liq. Auth.*, 43 AD3d 280, 280-281 [1st Dept 2007]; *see also Matter of Gray v Adduci*, 73 NY2d 741, 742 [1988] ["Hearsay evidence can be the basis of an administrative determination"]; *Matter of S & R Lake*

*Lounge v New York State Liq. Auth.*, 87 NY2d 206, 209 [1995] ["Substantial evidence . . . may be supplied by circumstantial proof"]). An administrative law judge is required to assess the credibility of witnesses and draw reasonable inferences, "and the courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists" (*Café La China* at 281).

The majority loses sight of the fact that this is an administrative hearing before an ALJ of the New York State Liquor Authority and not a criminal trial or proceeding. Significantly, the majority is applying inapplicable evidentiary standards to this matter. The Court of Appeals has noted that substantial evidence requires "less than proof by 'a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt' " (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998], quoting *300 Gramatan Ave. Assoc.*, 45 NY2d at 180). Indeed, as a burden of proof, "it demands only that 'a given inference is *reasonable and plausible, not necessarily the most probable*' " (*Matter of Miller v DeBuono*, 90 NY2d 783, 793 [1997], quoting Borchers and Markell, New York State Administrative Procedure and Practice § 3.12 at 51 [1995] [emphasis added]; *see also Matter of Berenhaus v Ward*, 70 NY2d 436, 443-444 [1987]).

Respondent's determination is supported by substantial evidence in the record as a whole, which demonstrated that petitioner had insufficient security at the entrance to the establishment and throughout the establishment, especially given the private-room structure and petitioner's awareness of a ketamine problem in the area. These circumstances allow for an inference to be drawn that lax security measures allowed the shooting incident to occur and permitted trafficking, storage and possession of controlled substances to occur at the premises.

Contrary to the majority's position, the evidence presented at the hearing established that the basis of the search warrant was that prior drug purchases were made at the premises. The memorandum from the precinct commanding officer was sufficient to establish that a search warrant was issued for the premises based on probable cause that included the documented purchase of illegal controlled substances at the location. Respondent was not required to call the commanding officer to testify, or to submit the search warrant or search warrant affidavit. Nor was respondent required to call other officers to testify about the prior purchases of controlled substances at the premises.

While the details of the Police Department's prior enforcement operations at the premises are not contained in the record, it can be inferred procedurally that there were complaints to the police department of illegal drug activities being conducted at the premises. The police investigated and made purchases of controlled substance at the bar and a search warrant was then obtained based on probable cause. The undisputed evidence before the ALJ clearly showed that a search warrant was issued for the premises based on illegal drug activities conducted at the karaoke bar and upon execution of the warrant illegal controlled substances were found on the premises. Thus, respondent's finding that petitioner suffered or permitted the storage, possession or trafficking in controlled substances as a result of petitioner's failure to exercise adequate supervision over the licensed premises is "a conclusion or ultimate fact" that may be reasonably extracted from the record (*300 Gramatan Ave. Assoc.*, 45 NY2d at 181).

Further, although the officers testified that the drugs were contained in small vials and a baggie, which could have been secreted on a person, the completely insufficient security at the bar along with petitioner's knowledge of rising ketamine sales in the area—which was conceded by petitioner's head of security—the police department's documented purchase of illegal controlled substances at the premises causing issuance of a search warrant, and the fact that ketamine was found secreted on the premises indicate that the premises was not properly supervised and that petitioner had the "opportunity through reasonable diligence to acquire knowledge of the alleged acts" (*see Matter of Leake v Sarafan*, 35 NY2d 83, 86 [1974]). There is nothing speculative about inferring from the unambiguous testimony of petitioner's head of security that there were often times when the entrance to the premises was left unguarded by a trained security guard to be watched by other staff members who were not trained to pat people down, and to therefore conclude that the complete lack of adequate security allowed drugs to be freely brought onto the premises. In any event, actual knowledge is not required. It is enough that petitioner "should have known of the asserted disorderly condition on the premises and tolerated its existence" (*Matter of Playboy Club of N.Y. v State Liq. Auth. of State of N.Y.*, 23 NY2d 544, 550 [1969] [internal quotation marks and citations omitted]).

Unlike the *Matter of 150 RFT Varick Corp. v New York State Liq. Auth.* (107 AD3d 524 [1st Dept 2013]), cited by the majority, which does not involve a search warrant, the matter before

us does not merely concern a one-time observation of an individual "snorting cocaine" at the premises. Rather, this matter concerns an ongoing problem with drug dealing at the premises that is evidenced by the procurement of a search warrant, and, given the inadequate security, the ALJ reasonably concluded that petitioner failed to exercise reasonable diligence in supervising the premises.

Thus, there was substantial evidence to sustain charges 12 and 14 that inadequate supervision by the licensee of the licensed business permitted the possession, use and sale of a controlled substance on the premises.

That additional evidence might have been helpful in determining this matter is of no moment. Further, "the more rigorous foundation requirements applied in criminal cases were inapplicable in this proceeding" (*Matter of Sander v New York City Dept. of Transp.*, 23 AD3d 156, 157 [1st Dept 2005]), and thus any concern expressed by the majority about the lack of foundation for the laboratory report is inappropriate. Indeed, contrary to the majority's conclusion, the redacted laboratory report was properly introduced without foundation in this proceeding. Moreover, the ALJ could reasonably conclude from the officers' testimony alone that the substance recovered was ketamine. Accordingly, any purported deficiencies in the laboratory report are inconsequential.

Nor is it consequential that some of the evidence in the record is hearsay evidence, as such evidence is admissible in administrative proceedings and "if sufficiently probative, it alone may constitute substantial evidence" (*Matter of Café La China Corp. v New York State Liq. Auth.*, 43 AD3d at 281).

Accordingly, respondent's determination should be confirmed and the petition dismissed.