*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 3, 2016          522395
_____

In the Matter of LUIS PENA,
                    Petitioner,

        v

                                        MEMORANDUM AND JUDGMENT

NEW YORK STATE GAMING
    COMMISSION,
                    Respondent.
_____

Calendar Date:  September 14, 2016

Before:  McCarthy, J.P., Lynch, Rose, Devine and Mulvey, JJ.

_____

        Meyer, Suozzi, English & Klein, PC, Garden City (Andrew J.
Turro of counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Kathleen M.
Arnold of counsel), for respondent.

_____

Devine, J.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Schenectady
County) to review a determination of respondent which, among
other things, revoked petitioner's licenses to participate in
pari-mutuel harness racing for a period of three years.

        Petitioner, as a licensed trainer of harness racehorses, is
prohibited from allowing any horse in his "custody, care or
control to be started" in a race if certain substances are
administered to the horse within a specified period prior to the
race (9 NYCRR 4120.4 [a]; see 9 NYCRR 4120.2).  All of the
numerous random drug tests of horses in petitioner's care were
negative.  The New York State Racing and Wagering Board

nevertheless obtained veterinary records insinuating that petitioner ran afoul of the rule with regard to multiple substances in the lead-up to hundreds of harness races run between January 2010 and April 2012. The Board sought to suspend or revoke petitioner's licenses and exclude him from New York racetracks due to those violations (see Matter of Pena v New York State Gaming Commn., 127 AD3d 1287, 1288 [2015], appeal dismissed 25 NY3d 1059 [2015], lv denied 26 NY3d 903 [2015]).

The administrative hearing on the charges focused in significant part on the admissibility of the veterinary records and their probative value, and the Hearing Officer admitted the records into evidence. At the conclusion of the hearing, the Hearing Officer sustained the charges in full and recommended that petitioner's licenses be revoked, that he not be allowed to reapply for three years and that he be fined $200 for each violation. Respondent dismissed two of the 1,719 violations, but otherwise adopted the Hearing Officer's recommendations.[1] Petitioner then commenced the present CPLR article 78 proceeding, and Supreme Court transferred the matter to this Court and stayed respondent's determination.

The determination against petitioner will be upheld if it is supported by substantial evidence, defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (People ex rel. Vega v Smith, 66 NY2d 130, 139 [1985] [internal quotation marks and citation omitted]; accord Matter of Bottom v Annucci, 26 NY3d 983, 984-985 [2015]). Petitioner does not dispute that respondent's determination may be based upon hearsay evidence such as information contained in the veterinary records (see Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1175 [2015]; Matter of Nolan v Constantine, 166 AD2d 778, 779 [1990]). Moreover, there is no question that the records were admissible in the administrative context even though they were not certified (see Racing, Pari-

_____

[1] During the pendency of the administrative proceedings, the powers and functions of the Board were transferred to respondent (see Racing, Pari-Mutuel Wagering and Breeding Law art 1, as added by L 2012, ch 60, part A, § 1).

Mutuel Wagering and Breeding Law § 321; State Administrative Procedure Act § 306 [1]; Matter of Ragin v New York City Employees' Retirement Sys., 19 AD3d 603, 604 [2005]). The issue, as a result, is whether the records were "sufficiently relevant and probative" to constitute substantial evidence for the determination (People ex rel. Vega v Smith, 66 NY2d at 139; see Matter of Doctor v New York State Off. of Alcoholism & Substance Abuse Servs., 112 AD3d 1020, 1022 [2013]; Matter of Nolan v Constantine, 166 AD2d at 779).

Horses in petitioner's care are stabled in New Jersey and, as such, respondent's director of investigations, Joel Leveson, requested the assistance of the New Jersey Racing Commission in obtaining the veterinary records. Joseph Trapanese, the administrator of investigations for the New Jersey Racing Commission, procured records from January 2010 through April 2012 directly from the veterinary practice that treated horses under petitioner's care and prepared the records. The veterinarian himself declined to certify the records, which were essentially billing statements that omitted a good deal of the information required of formal treatment records, but testimony at the hearing indicated that those deficiencies were normal in the milieu of harness racing. The records could accordingly be admitted to make whatever factual findings could be drawn from the sparse information contained in them (see e.g. Matter of Szczepaniak v City of Rochester, 101 AD3d 1620, 1621 [2012]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d 385, 388 [2007]).

That being said, the pivotal question in this case is whether substances were administered to horses within prohibited time frames, and the records lacked "substantial probative evidentiary value" on that key issue (Matter of Brown v Murphy, 43 AD2d 524, 525 [1973]). The records associate a date with each entry, but fail to indicate what the date represents. The only explanatory evidence in the record from anyone associated with the veterinary practice was in the cover letter transmitting the records to Trapanese, which advised that the dates listed in the records could reflect "the day that a treatment was prescribed, [the] horse was treated or [the] medication dispensed." A veterinarian testifying on petitioner's behalf further stated

that the lack of specificity in the records left one unable to "tell whether [the various substances] were dispensed or administered in all cases." Leveson nevertheless speculated, by simply relying on custom, that the records gave the dates of treatment, but made no effort to grapple with the affirmative statement of the practice that such was not the case. In fact, his efforts were limited to a telephone conversation with petitioner in which petitioner reiterated that the records contained billing errors with regard to the timing of treatments.[2]  In short, while respondent was free to consider the records, they do not constitute substantial evidence for the essential finding that horses in petitioner's care were administered substances within the prohibited time frames (see Matter of Laterza v New York State Racing & Wagering Bd., 68 AD3d 1509, 1512-1513 [2009]; cf. Matter of Fusco v New York State Racing & Wagering Bd., 88 AD3d 1240, 1241-1242 [2011], lv denied 18 NY3d 809 [2012]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 386-388).  The determination, which was based upon the records, must therefore be annulled.

Petitioner's remaining contentions, to the extent they are not academic in light of the foregoing, have been examined and found to lack merit.

Lynch, Rose and Mulvey, JJ., concur.


McCarthy, J.P. (dissenting).

I agree with the majority that if the dates found on

[2]  Respondent asserts that petitioner admitted in the telephone conversation with Leveson to administering Robinul (also known as glycopyrrolate) to many horses three "days away from the race" in violation of the 96-hour rule set by 9 NYCRR 4120.2 (g).  The Hearing Officer did not explicitly rely upon that conversation, which is, in any case, far from clear as to when that substance was administered.

veterinary records[1] regarding specified forms of veterinary care represent the dates upon which such treatment was administered, those records, along with other evidence, chronicle 1,717 violations by petitioner of rules prohibiting the administration of specified substances to a horse within specified windows prior to a race.  The majority, however, finds that a reasonable mind cannot reach the conclusion that those dates convey when treatment occurred.  As a result, the majority annuls the entirety of respondent's determination.  In contrast, I find that the inference that respondent made that the dates listed next to specified veterinary care represent the dates that such care was administered to be reasonable and plausible.  That conclusion requires confirmation and, accordingly, I respectfully dissent.

Absent some other infirmity, this Court is bound to confirm respondent's determinations regarding petitioner's violations if they are supported by substantial evidence, that is if the evidence supporting those determinations is that which "a reasonable mind may accept as adequate to support [the relevant] conclusion[s] or ultimate fact[s]" (Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d 385, 385 [2007] [internal quotation marks and citation omitted]).  Substantial evidence is a minimal standard that requires less than evidence beyond a reasonable doubt, less than overwhelming evidence, less than clear and convincing evidence and less than proof by a

---

[1]  Two distinct forms of veterinary records were submitted into evidence.  The first set of records provides a "chronological history" for each horse that the veterinarian cared for, which ascribed dates to noted forms of veterinarian care.  The second set of records provided billing information for each horse cared for with dates and prices being ascribed to a description of the veterinary service provided.  Generally, by comparing the dates in the two forms of records, one can also compare the descriptions of the care/service provided.  Considering the different information provided in each set of records in regard to the descriptions associated with dated entries, the records often provide supplemental information to one another in elaborating the care provided to a horse on a particular day.

preponderance of the evidence (see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 188 [1988]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 386). Substantial evidence "demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Miller v DeBuono, 90 NY2d 783, 784 [1997]; see Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 386). Where "room for choice" exists in the inferences to be drawn from evidence, this Court has no power to preference its own interpretation over that of the administrative agency tasked with the determination (see Matter of Berenhaus v Ward, 70 NY2d 436, 444 [1987] [internal quotation marks and citation omitted]). This great deference accorded to such an agency determination derives from the Legislature's decision to task an agency with expertise in the relevant law and regulations – rather than a court of general jurisdiction that lacks such expertise – with the authority to initially resolve legal disputes (see Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 388; Matter of Finger Lakes Racing Assn. Inc. v State of N.Y. Racing & Wagering Bd., 34 AD3d 895, 897 [2006], lv denied 8 NY3d 810 [2007]).

The proof relevant to the interpretation of the veterinary records consisted of expert proof regarding the customary practice of veterinarians, the records themselves and the proof regarding petitioner's admissions regarding veterinary treatment. At the hearing, Joel Leveson, the director of investigations for respondent, was found qualified to testify as an expert on "the use of equine medication and the illegal use of equine medication."[2]  In describing his professional work, Leveson explained that he dealt with veterinarians "every day."  Leveson further testified that he was familiar with the customary practice of veterinarians and that veterinarians treating standard bred horses customarily created records recording the drug that was administered to a horse and the date upon which it

---

[2]  Leveson gave lengthy testimony regarding his qualifications, relating to his current job, his work in the horse-racing industry and his having been "a professional horseman from age [18]."

was administered.  Thus, when respondent considered veterinary records and found that dates listed next to descriptions of veterinary care represented dates upon which such care was administered, it relied on expert evidence establishing that such an interpretation was consistent with customary practice within the veterinary industry.

Turning to the veterinary records[3] themselves, the records are prefaced by a cover letter that explains that the dates contained within the records represent "the day that a treatment was prescribed, horse was treated or medication dispensed for the horse."  Contrary to the majority's description of the records, however, this is not the only context for the individual record entries.  Each dated entry for a horse's "chronological history" is accompanied by a description/comments section containing further information.  For example, the records indicate an entry for the horse Blue Bird Dream on December 15, 2010 with the comment/description of "treatment with Bute/Robaxin complex for musculoskelatal infl."  An ordinary meaning of the term "treatment" is "an instance of treating someone or something," which would indicate that the records chronicled an instance of Blue Bird Dream being treated with robaxin (Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/treatment [accessed Oct. 4, 2016]).  Similarly, the description/comments section for Blue Bird Dream's veterinary care occurring on January 11, 2011 notes "injection" and then describes a substance.  An ordinary meaning of "injection" is "an act or instance of injecting," which would indicate that Blue Bird Dream received an injection on that date (Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/injection [accessed Oct. 4, 2016]).  With this in mind, in order for the majority to reach its conclusion, it necessarily finds

---

[3]  The relevant veterinarian was located in New Jersey.  Notably, licensed veterinarians in New Jersey are legally required to ensure that patient records "accurately reflect the treatment or services rendered" (NJAC 13:44-4.9 [a]).  A reasonable mind could find, as a general matter, that a person legally charged with a duty to maintain accurate records is more likely to do so than someone without such a duty.

that no reasonable mind could conclude that "treatment" meant that a horse was treated or that "injection" meant that a horse was injected. I disagree since a reasonable mind could reach such conclusions by ascribing those terms their plain meanings.

More generally, an examination of the records provides a reasonable basis to conclude that the veterinarian's default record-keeping practice was in accordance with custom: dates associated with care represented the administration of care unless otherwise specified. For example, Blue Bird Dream raced on October 14, 2010. The veterinary records contain an entry for Blue Bird Dream for the next day, October 15, 2010. The description/comments state "race performance exam." Notably, the description/comments do not explicitly state whether an exam was administered, prescribed or dispensed. Nonetheless, a reasonable mind would conclude that an exam actually occurred on that day, as it would be absurd to conclude that an exam was prescribed or dispensed.

As a second example indicating that the veterinarian's default procedure was to record the date that care was administered, the horse Vertical Horizon has a single "chronological history" entry for January 22, 2011 with the description/comments "Larynx . . . acupuncture." Turning to the veterinary billing records, Vertical Horizon has a single billing entry for January 22, 2011 with the note "inject throat." The billing records corroborate that, despite the fact that the veterinary records did not explicitly specify that "Larynx . . . acupuncture" was care administered on the date indicated, such treatment was administered rather than prescribed or dispensed. From the aforementioned examples, a reasonable mind could conclude that the veterinarian's default record-keeping procedure, consistent with customary practice within the industry, recorded the dates of the administration of care unless otherwise specified in the description/comments.[4]

---

[4] None of the charges at issue are based on veterinary records specifying a form of veterinary care that was a prescription or a dispensement.

Finally, Leveson's recorded phone call with petitioner offers further proof substantiating that the veterinary records recorded dates of actual treatment as well as independent proof supporting all of the violations regarding the administration of glycopyrrolate-robinul. During that conversation, petitioner explained that "when the horses train, they get treated," and when asked to explain what training meant, he explained that training is "a workout." Petitioner then described that such workouts occurred "[three] days out." Thereafter, petitioner agreed that "robinul and robaxin" were given to the horses on the same day as one another, and when Leveson then stated "[three] days away from the race. Am I saying the right thing?", petitioner replied "ye[s]." Undoubtedly, room for choice exists as to the interpretation of this phone call, but a reasonable mind could conclude that petitioner acknowledged administering robinul and robaxin to his horses three days prior to their respective races, which would necessarily amount to patent violations of the ban on administering robinul within 96 hours of a race (see 9 NYCRR 4120.2 [g] [8]).

More generally and more importantly, the phone conversation provides further proof supporting the conclusion that the relevant veterinary record entries recorded dates upon which treatment was administered. What is unambiguous about the phone conversation is petitioner's acknowledgment that the horses were treated with robinul and robaxin in the lead-up to races. That acknowledgment accords with respondent's conclusion that the relevant dates in the veterinary records represented treatment dates given that the dates associated with robaxin treatment entries often preceded the respective horses' races by less than three days.[5]

---

[5] In contrast, it makes little sense to conclude that the veterinarian records would record that a veterinarian was consistently prescribing treatments during prohibited windows for substances intended to be administered after a race. This is particularly true given that veterinary records show repeated entries for care on days immediately following a race, in which such prescriptions could have been provided if they were intended to be administered after the race and outside of a prohibited

The foregoing proof provides substantial evidence to support respondent's determination (see Matter of Case v New York State Racing & Wagering Bd., 61 AD3d 1313, 1314 [2009], lv denied 13 NY3d 705 [2009]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 388; Matter of Dutrow v New York State Racing & Wagering Bd., 18 AD3d 947, 947-948 [2005]; Matter of Sachs v New York State Racing & Wagering Bd., Div. of Harness Racing, 1 AD3d 768, 772 [2003], lv denied 2 NY3d 706 [2004]). Respondent made eminently reasonable determinations in evaluating the proof, making factual findings and reaching its determination.  Since room for choice existed as to the inferences to draw from the proof provided and respondent made reasonable and plausible inferences, this Court has no power to replace respondent's conclusions with ones that it would prefer. Accordingly, and considering that petitioner's remaining arguments are also without merit, I would confirm respondent's determination.


        ADJUDGED that the determination is annulled, without costs, and petition granted.




                        ENTER:

                        Robert D. Mayberger
                        Clerk of the Court

_____

window.